[No. D023050. Fourth Dist., Div. One. Aug. 7, 1995.]

GOUVIS ENGINEERING, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
CAMBRIDGE TERRACE OWNERS' ASSOCIATION et al., Real Parties
in Interest.

**COUNSEL**

Musick, Peeler & Garrett, Gerard Smolin, Jr., and Michael J. Hickman for Petitioner.

No appearance for Respondent.

Mower, Koeller, Nebeker, Carlson & Haluck, William A. Nebeker, Michael J. Kielty, Wingert, Grebing, Anello & Brubaker, Charles R. Grebing,

Thorsnes, Bartolotta, McGuire & Padilla and Mitchell S. Golub for Real Parties in Interest.

## OPINION

FROEHLICH, J.*—This petition, brought by a nonsettling defendant in a multiparty construction defect case, challenges an order made by the trial court which found the plaintiff's settlement with a number of codefendants to be "in good faith" in accordance with the terms of Code of Civil Procedure section 877.6.[1] The action was brought by Cambridge Terrace Owners' Association, a homeowners association representing numerous condominium owners (Association). Framed in counts for negligence, strict liability and breach of warranty, the complaint named as defendants the developer and general contractor on the project (collectively Developers). Developers cross-complained against and joined numerous subcontractors who worked on the project, claiming rights of indemnification. Association sought recovery for numerous categories of alleged construction defects, theoretically giving rise to cross-claims by Developers against virtually every subcontractor.

Global settlement discussions eventually resulted in an agreement whereby Association settled with Developers and Developers settled with 21 of the subcontractors. Three subcontractors did not settle, one of which was Gouvis Engineering, the petitioner herein. The terms of the settlement, as revealed by the petition for its approval, were as follows:

1. Developers would pay $4 million to Association.

2. A portion of this $4 million was "funded" (to use the wording of Developers' moving papers) by the contribution of $925,500 by the subcontractors.

3. Developers committed to continue their action against the three nonsettling subcontractors, and agreed to payments from this source as follows:

(a) The first $500,000 so recovered would be paid to Association.

(b) The next $1 million to be recovered would also be paid to Association. As to this $1 million, Developers guaranteed its payment by December 27,

---

*Retired Justice of the Court of Appeal, Fourth District, sitting under assignment by the Chairperson of the Judicial Council.

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

1995—that is, if the sum so recovered by that date were less than the additional $1 million, Developers would pay the difference.

(c) All additional recovery from the three nonsettling subcontractors would be divided 50 percent to Developers and 50 percent to Association.

The motion for good faith settlement included an analysis of the value of the settlement. The initial payment was valued at $4 million (notwithstanding that $925,500 had come from the subcontractors). The commitments to pay $500,000 and $1 million from the action against nonsettling defendants were valued at face amounts, or $500,000 and $1 million respectively. The commitment to pay 50 percent of any additional recovery was valued at $1 million. Hence, the petitioning parties asserted that their total settlement with the Association had a value of $6.5 million.

The petitioners lodged with their motion a detailed analysis breaking down total settlement to component values attributable to the various subcategories of the construction project. The documentation utilized damage estimates which had been prepared by experts for the plaintiffs as well as experts for the Developers. Allocations of damage were then made to the specific categories of alleged damage. Defective roofs, for instance, received an allocation of $356,871. The total of all allocated damage, including 18 separate classifications, aggregated the total settlement figure of $6.5 million. It is not possible readily to identify from this list the portion of damage therefrom which might be ascribed to negligence of Gouvis. However, by letter dated October 7, 1994 (a date preceding the date of the global settlement agreement, which was in January 1995) counsel for Developers asserted that the portion of the $6.5 million settlement attributable to Gouvis's fault was $451,291.

A hearing of the motion for determination of good faith settlement was held on January 26, 1995. After reviewing the moving and opposing paperwork the court granted the motion. The portions of the order relevant to our review are as follows:

"The motion for determination of good faith settlement by Defendants and Cross-Complainants [Developers] is granted pursuant to CCP §§ 877 and 877.6. The court finds the settlements between the Defendants and Cross-Complainants with both the Plaintiffs and the twenty-one (21) named settling Cross-Defendants are in good faith. . . .

"The court finds the opposing parties have not met their burden under CCP § 877.6(d). The Court further notes the allocations merely serve as a[]

cap on potential liability for the non-settling Cross-Defendants. Therefore, all pending Cross-Complaints for equitable indemnity and/or contribution against the settling parties are dismissed; all such future actions are barred."

Accompanying the motion for determination of good faith settlement was a motion by Association for leave to amend its complaint to name the nonsettling defendants, the complaint previously having named no subcontractors. This motion was denied. Accordingly, following settlement with Developers, the Association had no further direct recourse against any of the participants in the construction. Developers, of course, retained their cross-complaints for indemnity against the three nonsettling subcontractors, and as a result of the settlement agreement had an obligation to pursue these actions and to share the recovery with Association.

One would reasonably assume that Gouvis is a "party aggrieved" by the court's good faith ruling. Gouvis filed opposition papers and appeared at the hearing to oppose the determination. Gouvis was, therefore, entitled to file this petition in accordance with section 877.6, subdivision (e).[2] ██ Just exactly how Gouvis has been prejudiced by the ruling is, however, a somewhat elusive concept. In the typical case of this kind the plaintiffs, having not settled with some of the subcontractors, would maintain their claims, subject to an offset for the portion of the settlement with the contractor appropriately allocable to areas of joint obligation by the contractor and the nonsettling subcontractors. (See, e.g., *Erreca's* v. *Superior Court* (1993) 19 Cal.App.4th 1475 [24 Cal.Rptr.2d 156].) Since Association in this case never sued the subcontractors (and was not allowed at the late date of its motion to amend to do so) there is no issue as to a possible offset against a plaintiff's judgment against the subcontractors. The provision of section 877, subdivision (a) requiring a reduction of claims against nonsettling parties by the amount of the settlement is, therefore, ineffective.

The court's order dismissing "all pending Cross-Complaints for equitable indemnity and/or contribution against the settling parties" might appear to affect Gouvis's rights, except that we are not advised that Gouvis had any cross-complaint against any other subcontractor or, indeed, against Developers. The only litigation arising from this action yet pending which has the potential to affect Gouvis is the cross-complaint by Developers for indemnity.

██ As revealed by the pleadings in these cross-complaints, the elements of the causes of action for indemnity are (1) a showing of fault on the part of

---

[2]Section 877.6, subdivision (e) provides in part: "When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate."

the indemnitor (Gouvis), and (2) resulting damage to the indemnitee (Developers) for which Gouvis either contractually or equitably should be responsible.[3] (See 14 Cal.Jur.3d, Contribution and Indemnification, § 82, p. 754.) ▆ Herein lies the source of Gouvis's complaint: Developers' cross-complaint is limited to the amount it has paid in settlement to Association. The trial court has ruled that the totality of this amount is $6.5 million. While no specific ruling has been made on the breakdown of this total amount to whatever categories of damage may be the responsibility of Gouvis, it may be presumed that if the total is exaggerated the subparts also will be exaggerated. Gouvis therefore argues that Developers' total valuation of the settlement as well as its presumptive estimate of Gouvis's share of damage ($451,291) is excessive.

Our first consideration in facing this challenge to the good faith settlement order is to question how, if at all, the order might affect the subsequent action by Developers against Gouvis. ▆ The effect of an order adjudicating good faith of a settlement under sections 877 and 877.6 is to bar cross-complaints against parties who have settled and to provide an offset in the amount of the settlement to subsequent liability of nonsettlors. The cases dealing with the obligation of the settling parties to allocate the settlement to various claims all impose that requirement for the specific purpose of arriving at the proper offset. In *Alcal Roofing & Insulation* v. *Superior Court* (1992) 8 Cal.App.4th 1121 [10 Cal.Rptr.2d 844], the court remanded the good faith settlement issue to the trial court for further allocation of settlement amounts to particular claims because based on the record it could not determine the appropriate offset against a future judgment against a nonsettling roofer. In *Erreca's* v. *Superior Court, supra*, 19 Cal.App.4th 1475 our concern as to the assigned indemnity rights also related directly to the credit to be given nonsettling defendants. (*Id.* at pp. 1504, 1505.) Similarly, in *Regan Roofing Co.* v. *Superior Court* (1994) 21 Cal.App.4th 1685 [27 Cal.Rptr.2d 62], our reason for reversing the good faith settlement determination was that an inadequate allocation of values to various elements of damage prevented a determination of the proper setoff to be accorded the nonsettling roofer. (*Id.* at p. 1706.) As we stated, ". . . a proper valuation of the indemnity rights is necessary to accord appropriate credit to the nonsettling defendants against any eventual plaintiffs' judgment that they may suffer . . . ." (*Id.* at p. 1715.) Where a settlement can have no effect as an offset against future claims, what practical effect can it have as to nonsettling parties?

---

[3]While the pleadings contain causes of action for breach of contract and breach of express and implied warranty, it would appear that the only viable cause of action against Gouvis, an engineer rather than a constructor of anything, would be for equitable indemnity. This was the position taken by Gouvis in the trial court and it was not there challenged.

■ A contractual settlement of a disputed claim is an agreement the interpretation and effect of which are governed by ordinary principles of contract law. (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) ■ Gouvis, not being a party to the settlement agreement between Developers and Association, cannot, absent some unusual exception to ordinary principles of contract law, be bound or affected by any of its terms. The peculiar twist of law intruding upon this otherwise simple scenario is the applicability of sections 877 and 877.6. As noted above, section 877 specifically provides that the settlement and release of one joint tortfeasor or co-obligor does *not* effect a release of the nonsettling tortfeasor.[4] Since the reciprocating provision is that the nonsettling tortfeasor obtains a credit against his remaining liability equal to the settlement, it is necessary that a means be found for determining the amount of the offset. This mechanism is contained in section 877.6. We note that this section provides a unique judicial procedure. The parties to a settlement are privileged, by use of a motion procedure with accelerated time strictures and based on a hearing utilizing affidavits, to determine that their settlement is in "good faith." Notwithstanding that nonsettling parties are not participants to the settlement, they are specifically given the right to appear and oppose the assertion that the settlement is in "good faith." Indeed, the statute (§ 877.6, subd. (d)) imposes upon the party asserting lack of good faith the burden of proof.

What, then, we may ask, is the legal effect of a determination of good faith? We apprehend that it can be no more than that specified in these unusual statutory provisions: namely, nondischarge of joint liability of nonsettling parties and the creation of a credit against the claims against such nonsettling parties. Section 877 specifically provides that the determination of good faith "shall have the following effect," suggesting that indeed no "other" effect is contemplated.

Our courts have somewhat expanded upon the brief description in the statutes of the scope and effect of "good faith" findings. *Southern Cal. Gas Co.* v. *Superior Court* (1986) 187 Cal.App.3d 1030, 1036 [232 Cal.Rptr. 320] held that it was necessary for the court determining a good faith settlement to place a value on assigned nonmonetary rights, so that a credit for same could be calculated for the benefit of nonsettling parties. In *Regan Roofing Co.* v. *Superior Court, supra,* 21 Cal.App.4th at pages 1703-1704, we opined

---

[4]As noted in *General Motors Corp.* v. *Superior Court* (1993) 12 Cal.App.4th 435, 440 [15 Cal.Rptr.2d 622], the common law rule was to the contrary, the discharge of one joint tortfeasor constituting as a matter of law the automatic discharge of all other tortfeasors. One effect of section 877 (modeled after the Uniform Contribution Among Tortfeasors Act) was to abolish the common law rule.

that normally a settlement figure should be broken down into component parts so that subcontractors potentially liable for only one portion thereof can predict their credit. In *Peter Culley & Associates* v. *Superior Court* (1992) 10 Cal.App.4th 1484, 1498 [13 Cal.Rptr.2d 624], the court addressed the effect of an allocation of settlement to specific potential subcontractor damage, and distinguished between the proof required at a section 877.6 good faith hearing and that necessary to establish a claim of indemnification. The court concluded that the allocation made at the section 877.6 hearing is not conclusive in the indemnity action, but is only "presumptive evidence of liability and the amount thereof." (10 Cal.App.4th at p. 1498.)

In Developers' action against Gouvis for indemnity the terms of settlement approved at the good faith hearing are no doubt admissible in evidence, as suggested by *Peter Culley*. A key element of any action for indemnification is a showing of damage incurred by the indemnitee. (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97].) We conclude, however, that the allocation and indeed the valuation put on the settlement by the settling parties and approved by the trial judge as "good faith" have no binding or res judicata effect as to Gouvis in terms of the subsequent indemnity action. ▇ In order for a prior judgment to be conclusive as to subsequent proceedings, the issue first decided must be identical to the one subsequently presented. (*Bernhard* v. *Bank of America* (1942) 19 Cal.2d 807, 813 [122 P.2d 892].) In order that a party be bound by a prior adjudication, it must be shown that the prior procedure afforded a full and fair opportunity to litigate the issue. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 192, p. 626.) Res judicata principles should not apply where the "scope of substantive inquiry and the potential for development of evidence are much more restricted than the corresponding opportunity afforded in a court of general jurisdiction . . . ." (Rest.2d Judgments, ch. 1, p. 10.)

▇ In this case it is true that Gouvis was a party to the litigation, and also that Gouvis was permitted to and did participate in the good faith hearing. As we have noted above, however, the procedures utilized at the hearing are those of motion practice (reliance upon affidavits) rather than the ordinary rules of evidence. Not only is the hearing abbreviated, but the objective of it is not precise or accurate determination of fact. As we stated in Regan Roofing, ". . . the inquiry at the good faith settlement stage is not the same as the inquiry at trial, where complete precision of allocation could presumably be achieved." (*Regan Roofing* v. *Superior Court, supra,* 21 Cal.App.4th at p. 1704.) Further, we note that the burdens of proof in the hearings are different. At the good faith hearing it was Gouvis's burden, as the party opposing the finding of good faith, to show lack thereof (§ 877.6,

subd. (d)). At the trial of Developers' indemnity action against Gouvis the burden of proof will be upon Developers to prove the amount that has been paid by virtue of injury caused by Gouvis's fault. (See *Peter Culley & Associates* v. *Superior Court, supra,* 10 Cal.App.4th at p. 1498.)

We therefore conclude that the determination of the value of settlement and whatever underlying allocations may be deemed to have been approved at the good faith hearing have no precedential value in terms of the subsequent action by Developers against Gouvis for indemnification. Gouvis was therefore not legally prejudiced by the good faith order.

DISPOSITION

The petition for writ of mandate is denied.

Kremer, P. J., and Haller, J., concurred.