[No. D028673. Fourth Dist., Div. One. May 18, 2000.]

COLLINS DEVELOPMENT COMPANY, Cross-complainant and Respondent, v.
D. J. PLASTERING, INC., Cross-defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*Under California Rules of Court, rules 976(b) and 976.1, the Summary, Issues on Appeal, Discussion I, II and the Disposition are certified for publication.

COUNSEL

Campbell, Wolfenzon, Souhrada & Volk, John B. Campbell, Ronald J. Lauter; Greines, Martin, Stein & Richland, Martin Stein and Feris M. Greenberger for Cross-defendant and Appellant.

Duke, Gerstel & Shearer, William K. Shearer and Alan R. Johnston for Cross-complainant and Respondent.

OPINION

BENKE, Acting P. J.—

### SUMMARY

Cross-complainant and respondent Collins Development Company (Collins) was the developer of a large tract of condominium duplexes. Collins

was sued by University Canyon West Homeowners Association (UCW), which represents homeowners who purchased individual units in the development. UCW claimed the units suffered from a number of defects, including, in particular, defective stucco on the exterior of the units. UCW believed its members suffered a total of $9 million in damages.

UCW did not sue any subcontractors. However, Collins filed cross-complaints for contractual and equitable indemnity against 28 subcontractors. Collins eventually agreed to pay UCW a total of $5 million in cash. A number of subcontractors contributed approximately $1 million of the cash payment.

Under the settlement agreement, UCW released all of its claims against Collins, save those caused by alleged defective stucco. With respect to the stucco claims, Collins agreed that upon completion of litigation between itself and the stucco subcontractor, cross-defendant and appellant D. J. Plastering, Inc. (DJ), it would place $600,000 in an escrow account which would be released in whole or part, under certain conditions, to UCW. In particular, the developer agreed that if the amount it recovered from DJ was $600,000 or less, it would pay the amount of the judgment to UCW and retain for itself the balance of the $600,000. The next $400,000 of any recovery from DJ would be paid to Collins. The parties agreed 90 percent of any amount over and above $1 million recovered from DJ would be paid to UCW and 10 percent would be paid to Collins.

However, Collins's agreement to provide an additional $600,000 to UCW was subject to Collins's right to assign UCW its indemnity rights against DJ in lieu of the payment.

Following consummation of the settlement agreement between Collins and UCW, and over DJ's objection, trial of UCW's stucco claims against Collins and trial of Collins's claims against DJ were consolidated. The principal focus of the trial was on conflicting expert opinions with respect to the appropriate method of repairing the stucco damage. UCW initially argued that the stucco had to be replaced entirely at a cost of $5.79 million; Collins's expert argued that a strengthening agent could be applied on a spot basis at a cost of $1.97 million; and DJ argued that only spot repairs at a cost of $200,000 were needed. By the end of trial, UCW's expert agreed with Collins that the strengthening treatment, along with a lifetime warranty, would be sufficient if applied to the entire project at a cost of $3.97 million.

The jury found that the stucco was defective and that UCW had suffered $3.5 million in damages; the jury assigned 95 percent of fault to Collins and 5 percent to UCW.

During the trial of Collins's claims against DJ, DJ attempted to introduce evidence with respect to the damage caused by other subcontractors. However, the trial court prevented it from doing so. By special verdict the jury found DJ had been negligent in installing the stucco and that its negligence had caused $3.35 million in damage to the duplexes and that Collins had incurred $150,000 in reasonable attorney fees, expert fees and costs.

Relying in part on the jury's verdicts, the trial court itself then determined what portion of Collins's settlement with UCW was allocable to stucco damage. In making this determination, the trial court did not consider any additional evidence with respect to damage done by other subcontractors. Rather, the trial court relied upon the evidence presented at trial and posttrial briefs submitted by the parties. In its posttrial brief Collins argued that 71 percent of UCW's claims were for stucco damage and that 29 percent of its claims were for nonstucco damage. Collins reached these percentages on the basis of repair estimates UCW had presented to it prior to settlement. Applying these percentages to the $5 million paid in settlement, Collins argued that $3.5 million of the settlement was paid for stucco damage. The trial court adopted Collins's reasoning and entered judgment in Collins's favor for $3.5 million.[1]

While this appeal has been pending, Collins in fact assigned its judgment against DJ to UCW.

### ISSUES ON APPEAL

DJ contends the judgment against it must be reversed because Collins never properly established how much of the settlement was for stucco damage and how much could be allocated to other claims. In particular, DJ argues the jury should have been asked to resolve that question, rather than the trial judge in a posttrial proceeding.

DJ also argues the judgment against Collins was defective because UCW's judgment against Collins included economic damages for which Collins was not liable to the homeowners. In addition, DJ contends the trial court erred in consolidating trial of Collins's claims against it with UCW's claims against Collins. Finally, DJ argues that because Collins failed to allege and prove that it had a valid contractor's license at the time it built the duplexes, Collins could not recover any judgment against DJ.

As we explain in detail below, we agree with DJ that in the absence of its consent, the procedure adopted by the trial court was not the proper means of

---

[1]The judgment entered in favor of Collins also included as judgment creditors settling subcontractors who had asserted cross-claims for equitable indemnity against DJ.

allocating the settlement payments between stucco and nonstucco claims. DJ had the right to have the allocation issue decided by the jury and the right to present evidence bearing on the question of what proportion of the settlement should be allocated to its acts and what proportion should be allocated to the acts of other subcontractors. Thus we reverse the judgment and remand for further proceedings.

DISCUSSION

I

The general principles which govern DJ's liability as an indemnitor are now fairly well settled. "[W]hen the indemnitee settles without trial, . . . the indemnitee must show the liability is covered by the contract, that liability existed, and the extent thereof. The settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable (e.g., unreasonable in amount, entered collusively or in bad faith, or entered by an indemnitee not reasonable in the belief that he or she had an interest to protect.)" (*Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484, 1497 [13 Cal.Rptr.2d 624] (*Peter Culley*); accord, *Heppler v. J.M. Peters Co.* (1999) 73 Cal.App.4th 1265, 1283 [87 Cal.Rptr.2d 497].)

While the adversity of interest between an indemnitee and a third party claimant is sufficient to support a presumption that the indemnitee was liable to the third party in the amount agreed upon, no such adversity of interest exists with respect to allocation of the settlement between claims covered by an indemnity agreement and uncovered claims. "A presumption that the parties have reasonably allocated a settlement amount between issues in the action should be reserved for a settlement by parties with truly adverse interests in the allocation. [Citation.] Where the parties have purported to settle an imaginary dispute over allocation, that allocation should be given no special treatment in an indemnity action. Plaintiff should be required to prove the reasonableness of its proposed allocation by ordinary means." (*Peter Culley, supra,* 10 Cal.App.4th at p. 1498.)

In rejecting the contention that a trial judge can resolve the issues presented in a contractual indemnity case by way of a motion to determine the good faith of a settlement under Code of Civil Procedure section 877.6, subdivision (d), the court in *Peter Culley* made it clear that an indemnitee's right to contractual indemnity is a matter for disposition by way of trial, rather than by way of any abbreviated proceedings: "As explained above, in

a contractual indemnity action, the indemnitee must prove that liability is covered by the contract, that liability existed, and the extent thereof. A settlement in prior litigation is only presumptive evidence of liability and the amount thereof, which evidence may be overcome by the indemnitor's proof that the settlement was unreasonable." (*Peter Culley, supra*, 10 Cal.App.4th at p. 1498.)

We reached the same conclusion in *Gouvis Engineering v. Superior Court* (1995) 37 Cal.App.4th 642, 650-651 [43 Cal.Rptr.2d 785] (*Gouvis*), and found an indemnitee had the burden of proving, at trial, what portion of a settlement was allocable to the injury it had caused: "As we have noted above, however, the procedures utilized at the hearing are those of motion practice (reliance upon affidavits) rather than the ordinary rules of evidence. Not only is the hearing abbreviated, but the objective of it is not precise or accurate determination of fact. As we stated in [*Regan Roofing*], '. . . the inquiry at the good faith settlement stage is not the same as the inquiry at trial, where complete precision of allocation could presumably be achieved.' [Citation.] Further, we note that the burdens of proof in the hearings are different. At the good faith hearing it was [the indemnitor's] burden, as the party opposing the finding of good faith, to show lack thereof [citation]. At the trial of [the indemnitees'] indemnity action against [the indemnitor] the burden of proof will be upon [the indemnitees] to prove the amount that has been paid by virtue of injury caused by [the indemnitor's] fault. [Citation.]" (*Gouvis, supra*, 37 Cal.App.4th at pp. 650-651; accord, *CC-California Plaza Associates v. Paller & Goldstein* (1996) 51 Cal.App.4th 1042, 1052-1053 [59 Cal.Rptr.2d 382]; see also *Regan Roofing Co. v. Superior Court* (1994) 21 Cal.App.4th 1685, 1704 [27 Cal.Rptr.2d 62] ["the inquiry at the good faith settlement stage is not the same as the inquiry at [an indemnity] trial, where complete precision of allocation could presumably be achieved"].)

Because there is no dispute the settlement between UCW and Collins included payment for both stucco and nonstucco claims, an essential element of Collins's contract claim was an allocation of the settlement between stucco and nonstucco claims. (*Peter Culley, supra*, 10 Cal.App.4th at p. 1498; *Gouvis, supra*, 37 Cal.App.4th at pp. 650-651.) However, as we have noted, the allocation issue was not presented to the jury at trial but was decided by the trial court on the basis of posttrial briefs. This procedure was plainly defective. DJ was entitled to a trial of all parts of Collins's claim against it, including the allocation issue. (*Peter Culley, supra*, 10 Cal.App.4th at p. 1498; *Gouvis, supra*, 37 Cal.App.4th at pp. 650-651.)

Moreover, because Collins's claim was on a contract, DJ was entitled to have the allocation portion of that claim tried by the jury. (See *Selby*

*Constructors v. McCarthy* (1979) 91 Cal.App.3d 517, 526-527 [154 Cal.Rptr. 164] (*Selby Constructors*).) "This ' "denial of a trial by jury to one constitutionally entitled thereto constitutes a miscarriage of justice and requires a reversal of the judgment." ' " (*Arciero Ranches v. Meza* (1993) 17 Cal.App.4th 114, 126 [21 Cal.Rptr.2d 127], quoting *People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 300 [231 P.2d 832].) "[S]uch deprivation [of the right to a jury trial] is reversible error per se, without the need to demonstrate actual prejudice." (*Selby Constructors, supra*, 91 Cal.App.3d at p. 527.)

## II

Following trial, DJ moved for a judgment notwithstanding the verdict on the alternative grounds Collins did not present any evidence upon which an allocation could be made and that none of UCW's damages were recoverable from Collins. On appeal DJ argues the trial court erred in denying the motion and asks that we reverse with directions that judgment in its favor be granted.

Although we must reverse the judgment because DJ was not given a trial on a controverted issue, DJ is not entitled to judgment as a matter of law.

### A. *Allocation Evidence*

UCW presented evidence to the trial court with respect to the stucco and nonstucco claims made by UCW prior to settlement. The presettlement demands are, in the absence of some evidence of collusion, an acceptable means of reaching such an allocation because, prior to settlement, UCW had no incentive to diminish the relative size of its stucco and nonstucco claims. (See *Peter Culley, supra*, 10 Cal.App.4th at p. 1498 [settlement insofar as it resulted from negotiation of truly adversary interests sufficient to support factual inference].) Thus contrary to DJ's argument, Collins did present evidence which would have permitted a jury to properly allocate the settlement.

### B. *Cost of Repair Damages*

Contrary to DJ's argument, the fact the jury awarded UCW damages calculated on a cost of repair basis, does not make those damages unrecoverable in a strict liability action. Although we agree UCW was required to show that it had suffered some physical harm to its property aside from the installation of defective stucco, it more than met this burden by presenting testimony that the defective stucco had allowed water to seep into walls and

caused damage to lathing and tar paper. The fact that damages for this physical damage were calculated on the basis of the cost of repairing the stucco so that the damage to the other parts of the building would abate did not change the nature of the damage UCW suffered. As the court in *Transwestern Pipeline Co. v. Monsanto Co.* (1996) 46 Cal.App.4th 502, 531 [53 Cal.Rptr.2d 887], stated: " 'While economic loss is measured by repair costs, replacement costs, loss of profits or diminution of value, the measure of damages does not determine whether the complaint is for physical harm or economic loss. . . . In other words, the fact that the measure of the plaintiff's damages is economic does not transform the nature of its injury into a solely economic loss. . . . Physical harm to property may be measured by the cost of repairing the buildings to make them safe.' [Citation.]"

III*

. . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is reversed. Appellant to recover its costs of appeal.

Huffman, J., and Nares, J., concurred.

*See footnote, *ante*, page 771.