Filed 5/20/21  Vasquez v. Jameson Management CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JUAN CARLOS VASQUEZ, | D077598 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2016-00011352-CU-WT-NC) |
| JAMESON MANAGEMENT, INC., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Reversed.

Law Offices of Price K. Kent and Price K. Kent, for Defendant and Appellant.

Pairavi Law, Edwin Pairavi, and Joshua M. Mohrsaz, for Plaintiff and Respondent.

## INTRODUCTION

Juan Carlos Vasquez sued his former employer, Jameson Management, Inc. (Jameson), for discriminating against him as a disabled employee and for wrongful termination. Following two lapsed Code of Civil Procedure[1] section 998 offers and at least one trial continuance, and faced with bankruptcy should it lose at trial, Jameson made a preliminary written offer to settle the matter for $10,000. After several communications back and forth between the parties' attorneys, Jameson and Vasquez each signed a letter indicating they had reached terms of a settlement and would be drafting a formal settlement agreement that would be subject to section 664.6. But when Jameson supplied a formal written agreement for execution a few days later, Vasquez refused to sign it, explaining that it included an allocation of attorney fees, a term to which Vasquez had not agreed. Jameson disagreed, claiming its counteroffer was inclusive of attorney fees, and it asked Vasquez to sign the formal agreement. After several months passed, Vasquez filed a motion to enforce the letter agreement pursuant to section 664.6, along with a motion for attorney fees and costs in the amount of $222,230 and $12,144.45 respectively. The trial court determined the parties had reached an agreement and entered judgment in favor of Vasquez, awarding $77,980 in attorney fees and $12,144.45 in costs.

Jameson appeals the entry of judgment, contending the court erred by enforcing an agreement that was inclusive of attorney fees and costs as one excluding them. Jameson also contends that the attorney fees and costs were a material term of the agreement to which the parties assented because they

---

[1] Further section references are to the Code of Civil Procedure unless otherwise specified.

were included in the agreement by operation of the release provided for by the Civil Code section 1542 waiver and that the judgment here erroneously omits material terms.

We conclude that the parties did not enter an enforceable contract because they did not mutually assent to all material terms, and we will reverse the judgment on that basis. Because we conclude the parties did not form a contract, we do not reach any conclusion regarding whether the agreement to include a Civil Code section 1542 waiver precludes a party from seeking attorney fees separately, and we need not address the remaining concerns regarding the language of the judgment.

BACKGROUND AND PROCEDURAL FACTS

In April 2016, Vasquez sued Jameson for wrongful termination and disability discrimination, alleging Jameson failed to provide Vasquez with a reasonable accommodation or to engage in the interactive process, in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.).

Following a settlement conference in September 2017, Jameson's attorney, Price K. Kent, notified Vasquez's attorney, Edwin Pairavi, in the presence of Jameson's president and owner, James Brewster, that Jameson would never make an offer of settlement that did not include attorney fees and costs. In October 2017, Vasquez made a section 998 settlement offer for $25,001 that did not mention attorney fees or costs. Jameson allowed the offer to lapse.

In November 2018, Vasquez made a second section 998 settlement offer, this one for $49,001 and inclusive of attorney fees and costs. Jameson again allowed the offer to lapse.

3

Trial was scheduled for March 1, 2019.  On February 14, 2019, Jameson made a written offer to settle for $10,000, to be paid in five monthly installments to Vasquez's attorney's trust account, in exchange for a full release of Vasquez's claims, including a Civil Code section 1542 waiver, dismissal with prejudice, and execution of a formal settlement agreement, which would include confidentiality and tax indemnification provisions.  Pairavi told Kent that Jameson needed to sign the offer before he would present it to Vasquez.  Kent explained she had signed the "preliminary offer" on behalf of Jameson and would prepare a final settlement agreement upon its acceptance.

Later that evening, Kent emailed Pairavi a modified offer letter that added a statement:  "The settlement agreement will be binding and enforceable pursuant to Code of Civil Procedure section 664.6."

On February 20, 2019, Pairavi emailed Kent and explained that Vasquez insisted on Jameson's signature on the offer, after which there was a "great chance" that Vasquez would accept the offer.  Kent responded the next day, explaining that the parties' signatures on the settlement offer could not be enforceable under section 664.6 because that code governed only settlement agreements, not preliminary offers to settle.

On February 21, 2019, Pairavi emailed a counteroffer which changed the settlement amount to $14,000 and left the remaining terms unchanged.  Kent replied with a counteroffer for $12,000.  In the offer, Kent explained that, as the two attorneys had discussed the previous evening, Jameson's initial $10,000 offer had reached the limits of Jameson's financial resources, and it still required a five-month payment plan to be possible.  It continued: "Such a drain on [Jameson]'s already very limited resources cannot realistically be sustained for an additional two months . . . ."  Jameson's

4

president signed the offer letter below the statement, "This offer is presented and agreed upon." Vasquez returned the letter the following day with his signature below the, "This offer is accepted and agreed upon." Pairavi also sent an email stating that because there was a valid agreement, he would file a notice of settlement with the court, and he asked Kent to send the long form agreement for his review.

Four days later, Kent sent the long form settlement agreement to Pairavi. It contained all the terms mentioned in the $12,000 offer to settle. It provided for payments to be made payable to both Vasquez and Pairavi's law firm. It also stated the settlement amount included attorney fees and costs. Pairavi told Kent the parties had never discussed attorney fees and costs, the offer presented and accepted was silent as to fees and costs, and it asked Kent to remove those terms from the settlement agreement. Kent disagreed, saying Pairavi's statements were "simply not true" and asking for Vasquez's signature on the settlement and release agreement. Pairavi then accused Kent of not telling the truth. The parties never reached an agreement regarding attorney fees, and they never signed a formal settlement agreement.

On October 31, 2019, Vasquez filed a motion seeking entry of judgment under terms outlined in the signed letter. Vasquez argued the parties did not allocate or release attorney fees and costs, and he was statutorily entitled to recover attorney fees under section 1032 and Government Code section 12965(b) because he was a prevailing party in a FEHA matter. He requested $222,230 in attorney fees plus $12,144.45 in costs.

Jameson opposed the request, arguing, among other things, that there was no settlement agreement because there was not a "meeting of the minds on all material points." Jameson also asked the court to use its discretion to

5

deny attorney fees because the amount Vasquez requested exceeded what could have been recovered in a limited civil case. At the hearing, Jameson argued that the parties had made an agreement to enter a settlement agreement, but they had not agreed to the settlement terms because the material terms had not all been determined.

Whether the parties had explicitly discussed allocation of attorney fees and costs in the context of the most recent settlement negotiation was disputed. Kent's declaration stated that the parties had orally discussed allocation of fees, costs, and wages to each installment payment before they signed the agreement. Pairavi's declaration stated that "[a]t no point during [the] conversation did [they] discuss whether attorney's fees or costs were included in the settlement offer. . . . Ms. Kent's declaration to the contrary is an outright fabrication." Similarly, in an email exchange between the two shortly after the preliminary negotiations concluded, Pairavi wrote to Kent, "At no time did we ever discuss attorney fees and costs," and Kent replied, "As you are fully aware, your statements . . . are simply not true."

The court determined a written settlement agreement was entered based on the offer letter signed by each party, concluding the lack of a formal, executed agreement did not negate the existence of a settlement that contained material terms to which the parties had agreed. The court granted the request for attorney fees in part, awarding $77,980 in attorney fees and $12,144.45 in costs, significantly less than the $222,230 sought.

Judgment was entered February 25, 2020, directing Jameson to pay Vasquez $12,000 in six monthly installments of $2,000 per month, in addition to the awarded attorney fees and costs. Jameson timely appealed.

DISCUSSION

Jameson frames the main issue before us as one that concerns the effect of including a Civil Code section 1542 waiver in a preliminary agreement. It contends the parties' mutual assent to that term precludes Vasquez from separately arguing that the parties did not agree to an allocation of attorney fees. Vasquez argues attorney fees and costs are incidental to a judgment and therefore not included in a Civil Code section 1542 waiver. Thus, the judgment's exclusion of attorney fees and costs as part of the settlement amount was consistent with the parties' letter agreement. Although the parties have framed the issue as one concerning the Civil Code section 1542 waiver, at bottom, their dispute is over whether they reached an agreement regarding attorney fees and costs. Accordingly, we start by considering whether the allocation of attorney fees and costs was a material term, the mutual assent to which was necessary to form a contract, and, if so, whether the parties reached an agreement on that issue.

A. Applicable Standard of Review

"In ruling on a motion to enter judgment[,] the trial court acts as a trier of fact. It must determine whether the parties entered into a valid and binding settlement." (*Kohn v. Jaymar-Ruby, Inc.* (1994) 23 Cal.App.4th 1530, 1533.) As a finder of fact, the court can "determine whether the parties reached a binding mutual accord as to the material terms." (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 905.) On appeal, we determine whether there is substantial evidence to support the trial court's section 664.6 determination. (*Assemi*, at p. 911; *Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1166.) " 'Substantial evidence' is evidence of ' "ponderable legal significance." ' " (*Sasco Electric v. Fair Employment & Housing Com.* (2009) 176 Cal.App.4th 532, 535.) " ' "It must be reasonable in nature, credible, and

7

of solid value." ' " (*Ibid*.) In determining whether substantial evidence supports a factual finding, we do not isolate only evidence that supports that finding; nor do we disregard or overturn the court's findings simply because a contrary finding would have been equally or more reasonable. (*Id*. at pp. 535-536.) However, factual findings based on inferences that cannot fairly be drawn from the evidence are not supported by substantial evidence. (*Insurance Co. of North America v. Workers' Comp. Appeals Bd.* (1981) 122 Cal.App.3d 905, 910-911.) We review the entire record to determine whether there is substantial evidence. (*People v. Semaan* (2007) 42 Cal.4th 79, 88; *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.)

B. Legal Principles

A settlement agreement is interpreted using the same principles as any written agreement. (*Gouvis Engineering v. Superior Court* (1995) 37 Cal.App.4th 642, 649.) For contract formation, there must be parties capable of forming a contract who consent, the contract must have a lawful object, and there must be sufficient consideration. (Civ. Code, § 1550; *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 811 (*Weddington*).) The parties' consent to a contract must be free, mutual, and communicated by one to the other. (Civ. Code, § 1565.) For there to be mutual assent, or a meeting of the minds, the parties must agree on all material terms of the contract. (*Elyaoudayan v. Hoffman* (2003) 104 Cal.App.4th 1421, 1430 (*Elyaoudayan*).) The lack of mutual consent on all material points prevents contract formation. (*Banner Entertainment, Inc. v. Superior* Court (1998) 62 Cal.App.4th 348, 359 (*Banner Entertainment*); *Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1182 (*Hines*) ["A settlement is enforceable under section 664.6 only if the parties have agreed to all material settlement terms"].) If a material term is missing from an agreement, the trial court

8

cannot supply the term to complete the agreement and render it enforceable. (*Leeman v. Adams Extract & Spice, LLC* (2015) 236 Cal.App.4th 1367, 1374 (*Leeman*).)

In the context of mutual assent, a material term is one that is of such a nature that it "would affect a person's decision-making; significant; essential." (Black's Law Dict. (11th ed. 2019) p. 1170, col. 1.) "Whether a term is 'essential' depends on its relative importance to the parties and whether its absence would make enforcing the remainder of the contract unfair to either party." (*Copeland v. Baskin Robbins U.S.A.* (2002) 96 Cal.App.4th 1251, 1256, fn. 3 (*Copeland*).)

In evaluating whether the trial court erred in entering judgment in this case, we look to the enforceability of the settlement agreement allegedly reached between the parties, and we evaluate whether a contract was formed. Because the question of whether a particular term is material depends on its relative importance, which turns on the intention of the parties, mutual intent is a factual question. (*Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 405; *Copeland*, *supra*, 96 Cal.App.4th at p. 1256, fn. 3.) Thus, we review the court's decision to treat the contract as exclusive of attorney fees as a finding of fact subject to review for substantial evidence.

In general, mutual assent is determined by objective criteria. (*Weddington*, *supra*, 60 Cal.App.4th at p. 811; *Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 537.) The test is whether a reasonable person would conclude from the parties' outward conduct that they mutually agreed. (*Weddington*, at p. 811.) "Evidence as to the parties' understanding and intent in taking what actions they did take is admissible to ascertain when or whether a binding agreement was ever

9

reached." (*Banner Entertainment*, *supra*, 62 Cal.App.4th at p. 358.) Further, " ' "[w]hether a writing constitutes a final agreement or merely an agreement to make an agreement depends primarily upon the intention of the parties." ' " (*Harris v. Rudin, Richman & Appel* (1999) 74 Cal.App.4th 299, 307; *Elyaoudayan*, *supra*, 104 Cal.App.4th at p. 1430.)

C. Analysis

Substantial evidence does not support a conclusion that the allocation of attorney fees and costs was immaterial, allowing for a settlement agreement without their allocation. To the contrary, both parties believed the allocation of attorney fees and costs was material.

Before Jameson made its original offer to settle for $10,000, its attorney Kent told Pairavi that the company would not make any settlement amount that excluded attorney fees, showing attorney fees were essential to it when it countered Vasquez's $14,000 offer. Jameson's explanation for why it was not accepting that offer also showed the total cost of settlement was material. The letter explained that Jameson's original $10,000 offer had already "reached the limits of [Jameson]'s resources, thereby requiring a five-month payment plan to even make such an offer." Thus, Jameson was counteroffering $12,000 rather than accepting Vasquez's request for $14,000 because "[s]uch a drain on [Jameson]'s already very limited resources [could not] realistically be sustained for an additional two months. . . ." Because Jameson had already told Vasquez explicitly that any settlement it made would include attorney fees and its financial resources would be strained to their maximum with a $12,000 payment over six months, Jameson understood any settlement amount would include attorney fees, and it authorized the settlement with the understanding that the amount included fees and costs. There is no evidence in the record that Jameson considered

10

the payment of attorney fees and costs immaterial; to the extent its silence regarding those terms in the letter could lead to an inference of immateriality, such an inference here is not credible or reasonable under these factual circumstances. Given its financial situation and previous communications with Vasquez, the evidence supports Jameson's claim that under these circumstances, attorney fee allocation was a material term.

Vasquez argues attorney fees are incident to judgment and may always be awarded absent an express agreement of the parties, and he argues they cannot be considered a material term to the parties here as a result. However, substantial evidence does not support a claim that the allocation of attorney fees and costs was immaterial here. Instead, the evidence demonstrates that Vasquez, like Jameson, viewed the allocation of attorney fees as a term material to settling the matter. Vasquez stated in his declaration that he was only willing to settle the matter if he would have a separate opportunity to bring a motion for attorney fees and costs. Pairavi likewise confirmed that Vasquez would have rejected any offer that stated explicitly that it was inclusive of attorney fees. Further, the disparity in the amount offered in settlement, $12,000, as compared to the $234,374.45 that Pairavi sought in attorney fees and costs suggests the allocation of attorney fees was an essential consideration, as it was the most costly part of the dispute.

Even the court perceived the attorney fees as essential, commenting at the hearing to continue the trial: "[T]his is all about attorneys' fees. You all have told me that. So I understand what's moving this case." When Pairavi responded, "It really isn't," the court challenged the comment: "Oh, so nobody's going to be asking for fees if they win? Okay. Right." It is not entirely clear that Jameson or the court were aware that Pairavi's firm was

11

representing Vasquez on a contingency fee basis before the motion to enter judgment. However, it is clear that the parties were aware that significant attorney fees were at stake, and the court viewed it as an issue motivating their behavior, further suggesting their allocation was essential.

Vasquez's main argument is that settlement agreements silent as to the allocation of attorney fees are enforceable as agreements excluding them. Vasquez cites to *Folsom v. Butte County Assn. of Governments* (1982) 32 Cal.3d 668 (*Folsom*), where the Supreme Court concluded that the agreement there, which was silent as to costs and fees, did not prevent a party from bringing an attorney fees motion under section 1021.5 because in that situation the question of attorney fees could not be considered until after one party had prevailed, making it a question separate from their settlement. (*Folsom*, at p. 679.) However, there the court considered the facts surrounding the parties' settlement agreement and noted there were no facts to suggest the parties intended to waive the costs and fees, and the defendants conceded that attorney fees were not considered during settlement negotiations. (*Id.* at pp. 680-681.) In contrast, here there are facts to suggest the defendant intended its offer to be global, as well as facts indicating the parties had previously discussed or included an allocation of attorney fees in oral or written communications. There is even evidence, though it is contradicted, that the parties had addressed attorney fees verbally in the context of the most recent negotiations.

Vasquez also cites to *Rapp v. Spring Valley Gold Co.* (1888) 74 Cal. 532 for the proposition that "a fee waiver must be expressly stated within a settlement agreement." In *Rapp,* the court concluded the attorney fees were a necessary incident of the judgment in a foreclosure action, and they were not expressly or by necessary implication excluded by the entered stipulation.

12

(*Id.* at p. 533.)  The court there, like in *Folsom*, considered the context of the stipulated judgment in reaching its conclusion, and it noted that the parties had directly addressed attorney fees during their negotiations, and the plaintiff's attorney had informed the defendant and his counsel that he did not understand that attorneys' fees were cut off by the stipulation.  (*Id.* at pp. 534-535.)  There, unlike here, the defendant did not challenge the stipulation or otherwise ask to have it set aside.  (*Ibid*.)  Thus, the evidence there does not show the parties considered attorney fees and costs to be material, like the facts do here.

Finally, Vasquez cites to caselaw applying section 998 to conclude that a settlement agreement silent as to attorney fees must be exclusive of those fees.  (See *Ritzenthaler v. Fireside Thrift Co.* (2001) 93 Cal.App.4th 986, 990-991 [concluding attorney fees authorized by Civil Code section 1717 are available to a party who prevails by a section 998 offer that is silent as to costs and fees]; *Lanyi v. Goldblum* (1986) 177 Cal.App.3d 181, 187 [same]; *Pazderka v. Caballeros Dimas Alang, Inc.* (1998) 62 Cal.App.4th 658, 671 (*Pazderka*) [enforcing section 998 offer silent as to attorney fees to advance purpose of statute].)  We question the applicability of the rules governing section 998 offers to the general settlement agreement in this matter because of the ways rules governing section 998 offers can differ from those that govern contracts more generally.  (See *Pazderka*, at p. 671 [noting § 998 offers not always governed by general contract law principles].)

First, section 998 offers are cost-shifting in order to encourage serious consideration of the financial consequences of losing at trial and having to pay fees and costs as a result because " '[i]f the party who prevailed at trial obtained a judgment less favorable than a pretrial settlement offer submitted by the other party, then the prevailing party may not recover its own

13

postoffer costs and, moreover, must pay its opponent's postoffer costs, including, potentially, expert witness costs.' " (*Ignacio v. Caracciolo* (2016) 2 Cal.App.5th 81, 86 (*Ignacio*); § 998, subd. (c)(1).) The exclusion of attorney fees from the calculation of costs where the section 998 offer is silent allows for a clear comparison between the judgment amount at trial and the offer amount to assess applicability of the provision. (*Chen v. Interinsurance Exchange of the Automobile Club* (2008) 164 Cal.App.4th 117, 121 (*Chen*); see also *Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 269 [explaining the comparison is not uncertain when the § 998 offer includes "reasonable" attorney fees and costs rather than a specific amount when there is a mechanism for determining the amount of attorney fees allowable].) The parties were acutely aware of the financial consequences of losing at trial and had contemplated them in negotiating the settlement because each considered those details material to their decision-making.

Further, section 998 offers differ from other types of settlement agreements because section 998 offers limit the release of claims and parties to those involved in the litigation. (*Ignacio, supra*, 2 Cal.App.5th at pp. 86-87, quoting *McKenzie v. Ford Motor Co.* (2015) 238 Cal.App.4th 695, 706.) When a settlement offer includes terms or conditions different from those pending in litigation, it makes it difficult to determine the value of the offer. (*Chen, supra*, 164 Cal.App.4th at pp. 121-122.) Thus, an offer under section 998 that includes any ambiguity regarding the specific claims covered beyond the present litigation renders the offer invalid.[2] (*Chen*, at p. 122, fn. 5.) Accordingly, when a Civil Code section 1542 release is included in an

---

[2]     We also note that section 998 offers are evaluated under an appellate court's independent review, not under a substantial evidence standard. (*Chen, supra*, 164 Cal.App.4th at p. 122.)

14

offer to compromise, because it waives claims beyond those that may be at issue in the lawsuit, it invalidates a section 998 offer. (*Ignacio*, at p. 88.) The same rule does not apply to a settlement agreement like the one before us, where the parties had the flexibility to independently determine the value of the Civil Code section 1542 waiver.

We recognize that the allocation of attorney fees is not always a material term in a settlement agreement, but here the fees and costs were of significant concern to the parties, and each believed resolution of the issue was essential to settling the matter. Despite the materiality of the term here, the trial court determined that a settlement agreement that did not explicitly include a reference to the allocation of attorney fees demonstrated mutual assent and was enforceable. However, because the attorney fees were a material issue, the absence of any reference to them in the letter means the parties did not form an enforceable agreement, as there was no meeting of the minds on all material terms. (See *Leeman, supra*, 236 Cal.App.4th at p. 1374.) And it was improper for the trial court to supply the missing, material term in order to enter judgment. (See *Banner Entertainment, supra*, 62 Cal.App.4th at p. 359; *Hines, supra*, 167 Cal.App.4th at p. 1182.)

In reaching our decision here, we do not conclude that silence regarding attorney fees in a settlement agreement necessarily negates contract formation. Nor do we conclude that attorney fees are always a material term. We merely find that under the circumstances before us, the parties considered the attorney fees a material term, the allocation of which did not achieve mutual assent. Accordingly, no contract was formed.

Jameson makes several other arguments for why the judgment should be reversed. Having concluded that attorney fees and costs were a material

term to which the parties did not agree, we do not reach the remaining issues.

## DISPOSITION

We reverse the judgment and remand the matter to its status quo ante. Parties to bear their own costs on appeal.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

DO, J.

16