**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ALFRED W. GROSS, Commissioner of
Insurance, State Corporation
Commission, as deputy receiver of
Fidelity Bankers Life Insurance
Company,

*Plaintiff-Appellee,*

v.

SHEARSON LEHMAN BROTHERS
HOLDINGS, INCORPORATED,

*Defendant-Appellant,*

and

ROBERT WEINGARTEN; GERRY R.
GINSBERG; LEONARD GUBAR,

*Defendants.*

No. 01-1632

ALFRED W. GROSS, Commissioner of
Insurance, State Corporation
Commission, as deputy receiver of
Fidelity Bankers Life Insurance
Company,

*Plaintiff-Appellant,*

v.

SHEARSON LEHMAN BROTHERS
HOLDINGS, INCORPORATED,

*Defendant-Appellee,*

and

ROBERT WEINGARTEN; GERRY R.
GINSBERG; LEONARD GUBAR,

*Defendants.*

No. 01-1684

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-92-808-3)

Argued: April 5, 2002

Decided: August 23, 2002

Before WILKINSON, Chief Judge, and MICHAEL and
TRAXLER, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Helen Lalich Duncan, LEBOEUF, LAMB, GREENE &
MACRAE, L.L.P., Los Angeles, California, for Appellant. Patrick
Herrera Cantilo, CANTILO & BENNETT, L.L.P., Austin, Texas, for
Appellee. **ON BRIEF:** Allyson S. Taketa, LEBOEUF, LAMB,
GREENE & MACRAE, L.L.P., Los Angeles, California; Douglas M.
Palais, Dana J. Finberg, MCCANDLISH KAINE, P.C., Richmond,
Virginia, for Appellant. Susan E. Salch, Pierre J. Riou, CANTILO &
BENNETT, L.L.P., Austin, Texas; Howard W. Dobbins, Robert D.
Perrow, Elizabeth Mason Horsley, WILLIAMS, MULLEN, CLARK
& DOBBINS, P.C., Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Shearson Lehman Brothers Holdings, Inc. ("Shearson") appeals the district court's entry of final judgment in favor of Alfred W. Gross, the deputy receiver of Fidelity Bankers Life Insurance Co., on Shearson's claim for indemnity. Shearson also appeals the denial of its motion for attorneys' fees and costs. Finding no error, we affirm.

I.

We will briefly describe the interlocking business relationships among the related companies that figure in this case. We also describe other litigation that is central to Shearson's indemnity claim.

A.

First Capital Holdings, Inc. ("First Holdings"), the grandparent corporation, was a financial services and insurance holding company. First Holdings owned one hundred percent of Fidelity Bankers Insurance Group, Inc. ("Bankers Group") and First Capital Life Insurance Group ("Capital Group"). In turn, Bankers Group, a parent corporation, owned one hundred percent of Fidelity Bankers Life Insurance Co. ("Bankers Life"), a Virginia corporation. Capital Group, also a parent corporation, owned one hundred percent of First Capital Life Insurance Co. ("Capital Life"), a California corporation. In late 1988 Shearson bought approximately thirty-seven percent of the voting shares of First Holdings. As part of this stock purchase, Shearson obtained and exercised the right to appoint four of the six directors on First Holdings's board, making Shearson a controlling shareholder. In 1989 Shearson's interest in First Holdings was diluted to twenty-eight percent, but the four persons it had appointed to the board remained.

B.

Bankers Life had an Investment Advisory Agreement with First Holdings, under which First Holdings managed and administered

Bankers Life's assets. By early 1991 First Holdings had invested about thirty-eight percent of Bankers Life's assets in junk bonds. Starting in April 1991, due to a downturn in the junk bond market and adverse publicity about Capital Life, there was a substantial increase in the number of surrender requests submitted by policyholders to Bankers Life. These developments, and especially the fact that the junk bonds owned by Bankers Life were worth less than their book value, led the Virginia Bureau of Insurance to become concerned that Bankers Life would be unable to satisfy the surrender requests and that there would be a "run on the bank." On May 13, 1991, at the request of the Bureau of Insurance, the Circuit Court for the City of Richmond placed Bankers Life into receivership and appointed the State Corporation Commission (the "Commission") as receiver. Acting in its capacity as a court, Va. Code Ann. § 38.2-1508, the Commission appointed a deputy receiver. The Commission asserted "sole and exclusive jurisdiction over all the [property belonging to Bankers Life] and any claims or rights respecting such Property to the exclusion of any other court or tribunal." *Gross v. Weingarten*, 217 F.3d 208, 213 (4th Cir. 2000). In addition, the Commission enjoined anyone with a claim against Bankers Life from "commencing, bringing, maintaining or further prosecuting any action at law, suit in equity, arbitration, or special or other proceeding against [Bankers Life] or its estate, or the Deputy Receiver and his successors in office," except as authorized by the deputy receiver. *Id.*

In May 1991 First Holdings, Bankers Group, and Capital Group declared bankruptcy, which resulted in numerous lawsuits against Shearson and others. First, in August 1991 policyholders filed an amended class action complaint against Shearson and others, consolidating various lawsuits that were already pending in the state courts of California (the "Policyholder Action"). The complaint in the Policyholder Action among other things alleged that Bankers Life's and Capital Life's officers and directors had unlawfully created an illusion of growth and successful management which ultimately led to Bankers Life being put into receivership. In particular, the complaint alleged that Shearson was a control person and liable for improprieties relating to reinsurance treaties, the marketing of insurance products, and the decision to maintain a high percentage of Bankers Life's investment portfolio in junk bonds. Second, in early 1992 the Official Committee of Creditors Holding Unsecured Claims for and on behalf

of First Holdings, Capital Life, and Bankers Life, filed counterclaims to proofs of claims against Shearson and others in the pending bankruptcy cases (the "Bankruptcy Action"). The Bankruptcy Action involved claims for breach of fiduciary duty, waste of corporate assets, fraudulent transfer, and conspiracy. Third, in June 1992 a class action complaint was filed by securities holders of Bankers Life and Capital Life against Shearson and others in the United States District Court for the Central District of California. This action was consolidated under Multidistrict Litigation Docket No. 901 (the "Securities Action"). The Securities Action included claims that Bankers Life and Capital Life had insufficient statutory capital and surplus and that Shearson was a control person and thus liable to the securities holders of First Holdings. These several lawsuits eventually led Shearson to enter into a series of settlement agreements. In June 1992 Shearson entered into a court-approved settlement in the Policyholder Action and the Securities Action (the "Policyholder and Securities Settlement"). Three years later, in June 1995, Shearson also agreed to a court-approved settlement in the Bankruptcy Action (the "Bankruptcy Settlement").

## C.

In December 1992 the deputy receiver, acting on behalf of Bankers Life, its creditors, and its policyholders, sued Shearson in the United States District Court for the Eastern District of Virginia (the "Deputy Receiver Action"). The deputy receiver alleged, among other things, violations of federal and state securities laws, various forms of fraud and conspiracy, and fraudulent or voidable transfers. In response, Shearson filed a counterclaim (the "Counterclaim") alleging, among other things, that it was entitled to indemnity under state and federal securities laws from Bankers Life for the payments it had made in connection with the Policyholder and Securities Settlement and the Bankruptcy Settlement (collectively, the "Settlements"). The district court, in January 1998, determined that the trial should be bifurcated into liability and damages phases. The court also severed the Counterclaim from the Deputy Receiver Action and stayed discovery on the Counterclaim. The liability phase of the Deputy Receiver Action proceeded to trial, and on May 19, 1998, a jury rendered a verdict in favor of Shearson on all counts, providing Shearson with a complete defense to the allegations contained in the Deputy Receiver Action.

Because Shearson was found not liable in the Deputy Receiver Action, the district court lifted the stay on Shearson's Counterclaim against the deputy receiver. Subsequently, the district court dismissed the Counterclaim without prejudice, and Shearson petitioned the court for leave to file an amended counterclaim (the "Amended Counterclaim"). The court, however, refused to allow the filing of the Amended Counterclaim, and Shearson appealed to this court. We reversed the district court's refusal to permit the filing of the Amended Counterclaim and remanded the case for further proceedings. *Gross v. Weingarten*, 217 F.3d 208 (4th Cir. 2000).

After remand, both Shearson and the deputy receiver filed motions for summary judgment. The district court granted the deputy receiver summary judgment on Shearson's federal securities law claim for indemnification because it determined that indemnification was not an available remedy under the federal securities laws. The court, however, came to the opposite conclusion on Shearson's claim for indemnification under the securities laws of Virginia. Specifically, the court granted Shearson's motion for summary judgment on the question of liability on its Virginia securities law claim for indemnification because it concluded that state law allowed indemnity for an innocent party. Finally, the court denied Shearson any recovery for attorneys' fees and costs because it did not believe that such an award was available under Virginia law. *Gross v. Weingarten*, 3:92cv808 (E.D. Va., Mar. 2, 2001).

After the court ruled that Shearson was entitled to indemnification from Bankers Life under Virginia law, the court ordered the parties either to agree on the amount of the damages to be awarded, or if no agreement could be reached, to submit opposing briefs to the court on the amount of the award. Not surprisingly, the parties failed to reach agreement, and, as ordered, they submitted briefs to the court. The district court then concluded that Virginia law required the party who has a meritorious claim for indemnity "to offer sufficient evidence to enable the Court to allocate damages." *Gross v. Weingarten*, 3:92cv808 (E.D. Va., May 3, 2001). The court concluded that Shearson had failed to offer enough proof for it to allocate damages, and accordingly it entered judgment in favor of the deputy receiver.

Shearson filed a timely notice of appeal with this court, contending that the district court erred by (1) denying its claim for indemnifica-

tion under the federal securities laws; (2) awarding judgment to the deputy receiver on its indemnification claim under Virginia law; and (3) denying it any recovery for attorneys' fees and costs. In response, the deputy receiver filed a cross-appeal asserting, among other things, that Shearson's claim for indemnity under Virginia law was pre-empted, in part, by federal law, and that Shearson's state law indemnity claim was released, waived, or barred. We have jurisdiction over these appeals pursuant to 28 U.S.C. §§ 1291 and 1295. Our review of the district court's summary judgment rulings is de novo. *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 734 (4th Cir. 2000); *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1132 (4th Cir. 1996).

## II.

The district court entered judgment in favor of the deputy receiver on Shearson's indemnity claim under Virginia securities law because Shearson failed to offer appropriate proof of its damages. The court noted that the law of Virginia requires a party seeking indemnity from a third-party for a lump-sum settlement paid to resolve multiple claims to either (1) demonstrate that indemnity is available for all the settled claims; or (2) allocate the settlement between indemnifiable and non-indemnifiable claims. The court concluded that Shearson's offer of proof was insufficient to determine what portions of the Settlements were paid on claims for which Shearson was entitled to receive indemnity from Bankers Life.

Shearson, however, maintains that the district court misapplied Virginia law. Specifically, it contends that once the district court determined that Shearson was entitled to indemnity pursuant to Virginia's securities laws, the deputy receiver had the burden of proving which portion, if any, of the Settlements were paid in connection with non-indemnifiable claims. Thus, because the deputy receiver failed to prove that Shearson paid any portion of the Settlements to resolve non-indemnifiable claims, Shearson asserts that it was entitled to be indemnified for the full value of the Settlements.

Shearson misinterprets the law of Virginia, however. Virginia law places the burden of establishing damages on the party seeking the award, with speculation and conjecture providing no basis for recovery. *Carr v. Citizens Bank & Trust Co.*, 325 S.E.2d 86, 90-91 (Va.

1985). Consistent with this principle, a party seeking indemnity under Virginia law must either allocate a lump-sum settlement between indemnifiable and non-indemnifiable claims or demonstrate that the entire settlement was paid in connection with indemnifiable claims. *See Am. Bankers Ins. Co. of Fla. v. Jefferson Pilot Fire & Cas. Co.*, 21 Va. Cir. 3 (1989); *cf. Collins Dev. Co. v. D.J. Plastering, Inc.*, 97 Cal. Rptr.2d 83, 86-87 (Cal. Ct. App. 2000) (stating that under California law the indemnitee has burden of proving portion of settlement for which indemnification is appropriate). When the party seeking indemnity fails to provide this proof, final judgment may be entered against it. *Citizens Bank*, 325 S.E.2d at 90-91.

The district court properly identified and applied these legal principles. What Shearson seeks in its Amended Counterclaim is indemnification from Bankers Life for the Settlements (specifically, two lump-sum settlements) that it made in connection with multiple claims filed against it and others. Shearson had the burden of proving its damages either by establishing that all the claims resolved in the Settlements were indemnifiable according to Virginia law, or by allocating the settlements dollars between indemnifiable and non-indemnifiable claims. As we demonstrate below, Shearson has failed to meet its burden.

First, under Virginia law, when two or more tortfeasors cause a single indivisible injury to a third-party and "it is impossible to determine in what proportion each contributed to the injury," then an individual tortfeasor can be held liable for the entire injury. *Dickerson v. Tabb*, 156 S.E.2d 795, 801 (Va. 1967). When the injury is divisible, however, liability must be allocated based on the amount of injury each tortfeasor's actions caused the third-party. The Policyholder Action and the Securities Action included claims brought by policyholders of Capital Life and Bankers Life against, among others, Shearson and the officers and directors of Bankers Life and Capital Life. Bankers Life's policyholders maintained that the officers and directors of Bankers Life unlawfully created the illusion that the company was experiencing successful growth and that this wrongdoing caused the Commission to seize Bankers Life, resulting in the devaluation of their insurance policies and annuities. The policyholders also maintained that Shearson was responsible for these events because Shearson was a controlling shareholder of First Holdings, which in

turn controlled Bankers Group, Bankers Life's parent company. The policyholders of Capital Life made similar allegations against Shearson and the officers and directors of Capital Life. These allegations, along with others, were resolved in the Policyholder and Securities Settlement. Because the allegations involved multiple tortfeasors, including Shearson, the liability of each tortfeasor was limited to the portion of harm it caused the policyholders, unless the injury was indivisible. The injury alleged in the Policyholder Action and the Securities Action — losses experienced by the policyholders of two distinct companies caused by the actions of each company's officers and directors and Shearson — was divisible. Thus, in order for Shearson to receive indemnification from Bankers Life under Virginia law for the Policyholder and Securities Settlement, Shearson had to show what portion of that settlement was due to tortious conduct for which Banker's Life was responsible. Shearson's failure to provide the district court with such evidence permitted the court to enter judgment in favor of the deputy receiver.

Second, in order to receive indemnity under Virginia law, a party seeking the award must be an innocent party. That is, it must act without personal fault, but nevertheless be liable for damages caused by the negligence of a third party. *Carr v. Home Ins. Co.*, 463 S.E.2d 457, 458 (Va. 1995). Therefore, when the injury is partially due to the fault of the indemnitee (here, Shearson), allocation is required. The Bankruptcy Action alleged, in part, that Shearson engaged in a fraudulent conveyance by selling an insurance company at an inflated value. This fraudulent conveyance claim is based on an allegation of fault on the part of Shearson, not the fault of others. The Bankruptcy Settlement resolved this claim; therefore, in order to receive indemnity Shearson was required to allocate the portion of the Bankruptcy Settlement that resolved the fraudulent conveyance claim. Shearson failed to provide this allocation with respect to the Bankruptcy Settlement, so the district court properly denied indemnity under Virginia law.*

---

*Shearson now argues that this fraudulent conveyance claim was improperly asserted against it because it did not sell the insurance company. Rather, Shearson says its subsidiary, E.F. Hutton Group, Inc., made the sale. Shearson also maintains that the claim completely lacks

The district court's judgment and its order denying Shearson's motion for attorneys' fees and costs are affirmed.

*AFFIRMED*

---

merit. Neither contention, however, changes the fact the Bankruptcy Settlement resolved a claim that alleged Shearson's own fault, thereby requiring Shearson to allocate in order to receive indemnity under Virginia law.

Shearson also appeals the district court's denial of its claim for indemnification under the federal securities laws and the denial of its motion for attorneys' fees and costs. These aspects of the appeal also lack merit. Even if we assume that indemnity is available under the federal securities laws, Shearson would not be entitled to indemnity because of its failure to allocate damages between indemnifiable and non-indemnifiable claims. And, because we find no error in the district court's order denying Shearson's motion for attorneys' fees and costs, we affirm that order. Finally, because we affirm the entry of judgment for the deputy receiver, we need not address the merits of the cross-appeal.