[No. A057040. First Dist., Div. Three. Nov. 17, 1992.]

PETER CULLEY & ASSOCIATES, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN
FRANCISCO, Respondent;
PARK HILL JOINT VENTURE, Real Party in Interest.

**COUNSEL**

Bishop, Barry, Howe, Haney & Ryder, Thomas O. Haran, Nelson C. Barry III and William Reid Brown for Petitioner.

No appearance for Respondent.

Dobbs, Berger, Molinari, Vannelli, Nadel & Links and Robert D. Links for Real Party in Interest.

## OPINION

**WERDEGAR, J.—** ■ Code of Civil Procedure section 877.6[1] provides a *defensive* procedure by which a settling joint tortfeasor or co-obligor may extricate itself from a lawsuit and bar actions for equitable indemnity by remaining joint tortfeasors or co-obligors. The central element in section 877.6 is a finding by the court that the settlement was entered in good faith.

Good faith may also play a limited role in an action brought to enforce a contractual right to indemnification. Civil Code section 2778, subdivision 5 states that, if the person indemnifying neglects to defend the person indemnified, "a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former." When, instead of a recovery by judgment, there is a settlement of the underlying action, evidence showing the presence or absence of good faith may also affect the court's decision whether to accept the settlement as proof of an indemnitee's liability and the amount owed.

This contractual indemnity case illustrates some of the problems caused by blurring the distinction between the role of good faith in *defensive* section 877.6 proceedings and its role in *offensive* actions to enforce indemnity agreements. Instead of limiting good faith's role in this indemnity action, the superior court has made its good faith finding conclusive on the key issues in the case. The court has also inappropriately used motion procedures applicable to section 877.6, but not to actions for contractual indemnity.

### I. Facts and Procedures

Park Hill Joint Venture (Park Hill) was formed to develop a condominium project in San Francisco and hired the architectural firm of Kaplan/McLaughlin/Diaz (Kaplan). Kaplan hired Peter Culley & Associates (Culley) as consulting structural engineer on foundation design. By contract, Culley agreed to "defend, indemnify and hold [Kaplan] harmless from and against all loss, damage, injury or liability, real or alleged, resulting from [Culley's] negligent performance of services provided under" the agreement.

---

[1] Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

During excavation, Park Hill learned that the foundation footings as originally designed were not deep enough to reach load-bearing soil. Kaplan sued Park Hill to collect fees owed on the project. Park Hill cross-complained, alleging that the design flaws caused a delay of at least 153 days and increased construction costs. Kaplan tendered defense of the cross-complaint to Culley, but did not, in turn, cross-complain against Culley. Culley declined the tender and was not a party to the Park Hill/Kaplan action.

With the aid of a mediator, Park Hill and Kaplan settled the cross-complaint for $225,000. They agreed that of the $225,000 to be paid by Kaplan, $200,000 was paid "in recognition of the risks of liability associated with" Culley's foundation design work, and the rest was paid in recognition of the risks of liability associated with all other issues in the case. Kaplan assigned to Park Hill its indemnity rights against Culley and agreed to cooperate with Park Hill in its action against Culley.

Park Hill filed this action against Culley to enforce the indemnity agreement. Different juries considered whether Kaplan properly tendered the defense to Culley and whether Kaplan's active negligence barred indemnity. One jury found that tender was proper. Because, however, Culley presented no expert testimony about the standard of care, the court granted a nonsuit against Culley in the separate proceeding on the issue of Kaplan's active negligence. Citing the standards of section 877.6, the court then entertained Park Hill's motion to determine whether the settlement between Park Hill and Kaplan was in good faith. In a written decision, the court found the settlement, including the allocation of $200,000 to the foundation issue, was in good faith and was conclusive against Culley.

Culley petitioned this court for a writ of mandate, citing as authority section 877.6, subdivision (e).

## II. *Remedy by Writ of Mandate*

Section 877.6 provides in part: "(a) Any party to an action wherein it is alleged that two or more parties are joint tortfeasors or co-obligors on a contract debt shall be entitled to a hearing on the issue of the good faith of a settlement entered into by the plaintiff or other claimant and one or more alleged tortfeasors or co-obligors, . . . [¶] (c) A determination by the court that the settlement was made in good faith shall bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial or comparative indemnity, based on comparative negligence or comparative fault. [¶] (d)

The party asserting the lack of good faith shall have the burden of proof on that issue. [¶] (e) When a determination of the good faith or lack of good faith of a settlement is made, any party aggrieved by the determination may petition the proper court to review the determination by writ of mandate. . . ."

■ Arguably, subdivision (e) of section 877.6 provides that the court's determination, that Park Hill and Kaplan settled in good faith, is subject to review by writ of mandate. Park Hill contends, however, that writ review under subdivision (e) does not apply where, as here, the good faith determination was made to enforce a contractual indemnity right. Park Hill says that section 877.6 is designed to deal with equitable indemnity claims among multiple defendants in the same case where expedited review facilitates continuation of the action against nonsettling defendants. Here, expedited review is not needed because the good faith determination came near the end of a two-party action (only the damage issue remained, including attorney fees incurred by Kaplan in defense of Park Hill's action).

We agree with Park Hill that section 877.6, subdivision (e) does not apply to a good faith determination in an action to enforce contractual indemnity. Thus, we act under our general writ authority. (§ 1086.) Under the peculiar circumstances of this case, appeal is not an adequate remedy. The proceedings below have become confused by a blurring of the distinctions between section 877.6 proceedings and proceedings to enforce contractual indemnity rights. This confusion has spilled over into the channels for review. Speedy clarification of procedures in both courts is warranted. Procedural mistakes have already introduced error into the court rulings and may adversely affect the unfinished proceedings in the superior court. Absent intervention at this stage, reversal on appeal seems inevitable.

### III. *Contentions of the Parties*

Culley contends the court improperly accepted an allocation of damages from the settlement of an action to which Culley was not a party and in which its negligence was not in issue. Culley argues the court's ruling on good faith should have addressed only the total settlement amount of $225,000, not the allocation of $200,000 to the foundation issue. Culley further asserts the court erred in holding that a good faith settlement conclusively established Culley's liability, instead of merely creating an evidentiary presumption that Culley was liable for $200,000.

Park Hill, in turn, contends that, pursuant to Civil Code section 2778, subdivision 5, the settlement was a "recovery" against Kaplan and, because

entered in good faith, was conclusive against Culley. Park Hill suggests that, by refusing tender of the defense, Culley lost the right to litigate the issue of its negligence. Park Hill concludes the settlement's allocation of $200,000 to the foundation issue is binding on Culley by virtue of the court's ruling on good faith.

Before addressing these contentions, we briefly review the relationship between equitable and contractual indemnity and the general principles of law applicable to contractual indemnity.

### IV. *Relationship Between Equitable Indemnity and Express Contractual Indemnity*

In the original action, had Park Hill named Culley as a defendant on its cross-complaint against Kaplan or had Kaplan cross-complained against Culley for equitable indemnity, Kaplan, as a settling defendant, could have used section 877.6 proceedings *defensively* against Culley. Any party to the original action could have asked the court to consider whether the settlement was in good faith. If the court found the settlement to be in good faith, Park Hill could have proceeded against Culley, who could have set off $200,000 against any judgment obtained by Park Hill. (*Jaramillo* v. *State of California* (1978) 81 Cal.App.3d 968, 971 [146 Cal.Rptr. 823].) Kaplan, in turn, could have used the confirmed settlement defensively as a bar to any claim by Culley for equitable indemnification and could still have pursued its equitable or express contractual indemnity rights against Culley. (*Bay Development, Ltd.* v. *Superior Court* (1990) 50 Cal.3d 1012, 1032 [269 Cal.Rptr. 720, 791 P.2d 290]; *Far West Financial Corp.* v. *D & S Co.* (1988) 46 Cal.3d 796, 815-816 [251 Cal.Rptr. 202, 760 P.2d 399]; *C. L. Peck Contractors* v. *Superior Court* (1984) 159 Cal.App.3d 828, 834 [205 Cal.Rptr. 754].)

Because the original action was a two-party action involving only Park Hill and Kaplan, section 877.6 procedures did not, in fact, come into play; neither party to that action could have contested its own settlement. Kaplan, however, as settling defendant, retained the right to pursue either equitable or contractual indemnity claims against Culley. (*Far West Financial Corp.* v. *D & S Co., supra*, 46 Cal.3d at pp. 815-816; *Mullin Lumber Co.* v. *Chandler* (1986) 185 Cal.App.3d 1127, 1133-1135 [230 Cal.Rptr. 122].) Consequently, upon agreement about the price of settlement, the parties' focus shifted to the role the settlement would play in any subsequently filed indemnity action against Culley, i.e., to allocation of the settlement amount between foundation design and other issues. Kaplan transferred its indemnity right to Park Hill, who pursued the contractual indemnity claim.

## V.  Contractual Indemnity Generally

### A.  Interpretation of the Indemnity Contract

"Indemnity is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." (Civ. Code, § 2772.) A collection of rules, developed primarily in insurance and construction cases, governs actions to enforce indemnity agreements.  ■  Paramount is the rule that "[w]here . . . the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract and not by reliance on the independent doctrine of equitable indemnity." (*Rossmoor Sanitation, Inc.* v. *Pylon, Inc.* (1975) 13 Cal.3d 622, 628 [119 Cal.Rptr. 449, 532 P.2d 97]; accord, *E. L. White, Inc.* v. *City of Huntington Beach* (1978) 21 Cal.3d 497, 508 [146 Cal.Rptr. 614, 579 P.2d 505]; *Markley* v. *Beagle* (1967) 66 Cal.2d 951, 961 [59 Cal.Rptr. 809, 429 P.2d 129].)

### B.  Negligence of the Indemnitee

■  Depending on the commercial context, an indemnity agreement may require negligence of the indemnitor as a condition to indemnification and/or may indemnify the indemnitee even for its own negligence, as many insurance agreements do. *Rossmoor Sanitation, Inc.* v. *Pylon, Inc., supra,* 13 Cal.3d 622, discussed negligence of the indemnitee (Kaplan here): "Past cases have held that an indemnity agreement may provide for indemnification against an indemnitee's own negligence, but such an agreement must be clear and explicit and is strictly construed against the indemnitee. [Citation.] If an indemnity clause does not address itself to the issue of an indemnitee's negligence, it is referred to as a 'general' indemnity clause. [Citations.] While such clauses may be construed to provide indemnity for a loss resulting in part from an indemnitee's *passive* negligence, they will not be interpreted to provide indemnity if an indemnitee has been *actively* negligent. [Citations.] [¶] Provisions purporting to hold an owner harmless 'in any suit at law' [citation], 'from all claims for damages to persons' [citation], and 'from any cause whatsoever' [citation], without expressly mentioning an indemnitee's negligence, have been deemed to be 'general' clauses." (13 Cal.3d at pp. 628-629, italics in original.)

In the instant case, the indemnity clause does not address the issue of Kaplan's own negligence. Thus, it may be construed to provide indemnity for losses resulting from Kaplan's passive negligence, but not from Kaplan's active negligence. As mentioned above, the court rejected Culley's attempt to defeat indemnity by proving Kaplan's active negligence. That ruling is not

challenged here; hence, no question of the indemnitee's negligence is presented.

### C. *Indemnitee as a Volunteer*

■ As a general rule, an indemnity contract does not cover losses for which the indemnitee is not liable to a third person or for which the indemnitee improperly pays. (*Southern Cal. Gas Co.* v. *Ventura etc. Co.* (1957) 150 Cal.App.2d 253, 257 [309 P.2d 849].) "However, one acting in good faith in making payment under a reasonable belief that it is necessary to his [her] protection is entitled to indemnity or subrogation, even though it develops that he [she] in fact had no interest to protect. [Citation.]" (*Aetna Life & Cas. Co.* v. *Ford Motor Co.* (1975) 50 Cal.App.3d 49, 52-53 [122 Cal.Rptr. 852].)

Culley has not asserted that Kaplan was a volunteer instead of a party potentially liable on Park Hill's claim.

### D. *The Effect of a Settlement*

■ "The law is well settled that, where one is bound either by law or agreement to protect another from liability, he [she] is bound by the result of a litigation to which such other is a party, provided he [she] had notice of the suit and an opportunity to control and manage it. [Citations.] This doctrine also finds support in the following California cases: [citations]. The judgment recovered in such a case is the mode by which the insured proves to the insurer that the intrinsic character of the accident was such that he [she] was liable for the consequences of it, and the judgment is conclusive evidence that the insured was liable, and to the extent of the amount of the judgment. [Citations.] [¶] On the other hand, where there is no trial and no judgment establishing the liability of the insured, but a settlement of the litigation has been made, the question whether the liability of the insured was one which the contract of insurance covered is still open, as is also the question as to the fact of liability and the extent thereof, and these questions may be litigated and determined in the action brought by the insured to recover the amount so paid in settlement." (*Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624, 631 [40 P.2d 311].) "[I]f an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him [her] may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of

such liability. [Citations.]" (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297], citing *Lamb, supra.*)

## VI.  *Application of Indemnity Law to This Case*

### A.  *Interpretation of the Contract*

■  The contract here compelled Culley to "defend, indemnify and hold [Kaplan] harmless from and against all loss, damage, injury or liability, real or alleged, resulting from" Culley's negligence. The parties differ in their interpretation of this clause. Park Hill says it requires that Culley defend and indemnify whenever there is an allegation of negligence, whereas Culley argues (apparently based on the positioning of "real or alleged") that actual negligence is a condition to the obligation to defend and indemnify.

If Park Hill is correct that Culley has agreed, like an insurance company might, to defend Kaplan in any action and indemnify Kaplan for any losses arising out of foundation work regardless of Culley's actual negligence, under *Isaacson* v. *California Ins. Guarantee Assn., supra,* 44 Cal.3d at page 791, Kaplan's settlement with Park Hill would be presumptive evidence that Kaplan was liable to Park Hill in the amount of the settlement. (See *Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104, 1110 [7 Cal.Rptr.2d 131].) But if Culley's interpretation of the contract, not Park Hill's, is correct, the effect of the settlement need be considered only if Culley's negligence were proven. Thus, the court here should have examined the contract and determined whether the "liability of [Kaplan] was one which the contract [for indemnity] covered . . ." (*Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d at p. 631) before considering whether the settlement showed Kaplan's liability. Perhaps because of preoccupation with the question of good faith and possible application of the standards of section 877.6 and related case law, the court evidently never decided which party's interpretation of the contract was correct.

### B.  *The Meaning of Civil Code Section 2778, Subdivision 5*

Park Hill maintains that the dicta in *Lamb* v. *Belt Casualty Co., supra,* 3 Cal.App.2d at page 631 (repeated in *Isaacson* v. *California Ins. Guarantee Assn., supra,* 44 Cal.3d at p. 791), which suggests that a settlement is only presumptive evidence of liability and the amount thereof, should be overruled, disapproved, or somehow construed to comply with Civil Code section 2778, subdivision 5, which section, Park Hill contends, makes the court's finding of good faith conclusive against Culley on issues of Culley's

negligence and allocation of the settlement. Park Hill argues that, pursuant to Civil Code section 2778, subdivision 5, Culley, by failing to accept tender of the defense, lost all right to litigate the issue of its negligence. We disagree.

Civil Code section 2778 provides in part: "In the interpretation of a contract of indemnity, the following rules are to be applied, unless a contrary intention appears: [¶] 1. Upon an indemnity against liability, expressly, or in other equivalent terms, the person indemnified is entitled to recover upon becoming liable; [¶] 2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof; [¶] 3. An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion; [¶] 4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he [she] chooses to do so; [¶] 5. If, after request, the person indemnifying neglects to defend the person indemnified, *a recovery against the latter suffered by him [her] in good faith, is conclusive in his [her] favor against the former;* . . ." (Italics added.)

Park Hill's position seems to be that the juxtaposition in Civil Code section 2778, subdivision 5 of the term "good faith" with the words "is conclusive" makes the court's good faith determination in a contractual indemnity case similar to such a determination in section 877.6 proceedings. The superior court's written order suggests that it interpreted the subdivision the same way. However, we interpret subdivision 5 differently.

"Recovery" in Civil Code section 2778, subdivision 5 is not defined by the statute, but neither does the statute mention the possibility of settlement and how it would affect enforcement of an indemnity agreement. The wording of the statute does not, in itself, support Park Hill's interpretation. A negotiated settlement is not normally thought to have been "suffered" by an indemnitee. More importantly, Park Hill's reading is inconsistent with *Isaacson* v. *California Ins. Guarantee Assn.*'s explanation of the law (quoted *ante*, pp. 1493-1494).

We conclude that insofar as Civil Code section 2778, subdivision 5 makes a "recovery" suffered in good faith conclusive, the statute refers only to a

recovery by judgment against the indemnitee.[2] We also conclude that indemnification for either a recovery by judgment or a settlement presupposes that other contractual conditions for indemnity, such as the indemnitor's negligence, have been proven.

None of the meager decisional authority addressing Civil Code section 2778, subdivision 5 conflicts with our reading. Although no case has discussed the effect of a settlement on an action for indemnity, the California Supreme Court, when it has mentioned subdivision 5, has consistently equated "recovery" with "judgment" after trial. (See *Parra* v. *Traeger* (1931) 214 Cal. 535, 538 [6 P.2d 941]; *Eva* v. *Andersen* (1913) 166 Cal. 420, 425 [137 P. 16]; *Showers* v. *Wadsworth* (1889) 81 Cal. 270, 273 [22 P. 663].) Early Court of Appeal decisions involving indemnity after judgment have repeated the equation. (See *Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 161 [331 P.2d 766]; *Sears* v. *Illinois Indemnity Co.* (1932) 121 Cal.App. 211, 225 [9 P.2d 245]; *Bryson* v. *International Indemnity Co.* (1927) 88 Cal.App. 100, 103 [262 P. 790]; *Thomas* v. *Layer* (1920) 48 Cal.App. 199, 202-203 [191 P. 949].) In most of the decisions applying Civil Code section 2778, subdivision 5 to judgments after trial, the courts have noted that even a judgment is conclusive only "in respect to the matters adjudged. No one would contend that it precludes the company from defending on the ground that it did not issue the alleged policy or that the policy issued by it does not cover the motor vehicle which caused the injury. It seems equally clear that the company may show in defense that its policy does not indemnify against liability for damage to persons of the class to which the injured person belongs." (*Bryson* v. *International Indemnity Co.*, *supra*, 88 Cal.App. at p. 104; accord, *Sears* v. *Illinois Indemnity Co.*, *supra*, 121 Cal.App. at p. 225; *Bonfils* v. *Pacific Auto. Ins. Co.*, *supra*, 165 Cal.App.2d at p. 162.)[3]

---

[2]We reject Park Hill's argument, advanced only in passing remarks at oral argument, that because subdivision 6 of Civil Code section 2778 refers to "judgment," use of the term "recovery" in subdivision 5 must embrace more than a judgment, to include a settlement. Subdivision 6 provides: "If the person indemnifying . . . has not reasonable notice of the action or proceeding against the person indemnified, or is not allowed to control its defense, judgment against the latter is only presumptive evidence against the former." Directed to protecting an indemnitor's interest in participating in the defense, subdivision 6 is not at issue where, as here, an indemnitor has refused the defense.

[3]We realize that a dictum in *Smith* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 5 Cal.App.4th at pages 1114-1115 suggests that a settlement accompanied by a stipulated judgment may be considered a "recovery" within the meaning of Civil Code section 2778, subdivision 5, as long as there is no covenant not to execute. However, this dictum is not persuasive because neither *Smith* nor the authorities discussed therein faced the issue before us. In fact, most of the discussion in *Smith* bolsters our reading of the law. *Smith* relied in part on *Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d 775 and focused, in a slightly different context, on whether the settling parties were really adverse on the issues they purported to

C.  *The Controlling Effect of Lamb and Isaacson*

Park Hill contends that *Phoenix Ins. Co.* v. *United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511, 1526-1527 [235 Cal.Rptr. 185], *Mabie & Mintz* v. *B & E Installers* (1972) 25 Cal.App.3d 491, 495 [101 Cal.Rptr. 919], *Safeway Stores, Inc.* v. *Massachusetts Bonding & Ins. Co.* (1962) 202 Cal.App.2d 99, 115-118 [20 Cal.Rptr. 820], and *Pac. Tel. & Tel. Co.* v. *Pac. Gas & Elec. Co.* (1959) 170 Cal.App.2d 387, 392 [338 P.2d 984] show that a settlement in good faith is conclusive on all issues. In none of the cited cases, however, did the court enforce the indemnity contract merely because the indemnitee had settled. Thus, in *Safeway Stores, Inc., supra*, at page 106 and *Pac. Tel. & Tel. Co., supra*, at pages 390-391, the trial courts found the indemnitors at fault. In *Pac. Tel. & Tel. Co.*, the amount of settlement was not in question, and in *Safeway Stores, Inc.*, the court sustained the lower court's determination of the amount (at pp. 118-119). In *Mabie & Mintz, supra*, at page 497, the court noted that the trial court, in the indemnity phase of trial, found the settlements to be reasonable. Finally, in *Phoenix Ins. Co., supra*, at pages 1526-1527, the court explained the law in much the same way we have discussed it, citing the rule that a settlement by the indemnitee is presumptive evidence of liability and amount, which presumption is subject to being overcome by proof. None of these decisions, therefore, conflicts with our interpretation of Civil Code section 2778, subdivision 5.

We conclude, therefore, that when the indemnitee settles without trial, the principles of *Lamb* v. *Belt Casualty Co., supra*, 3 Cal.App.2d 624 and *Isaacson* v. *California Ins. Guarantee Assn., supra*, 44 Cal.3d 775 apply. Pursuant to those principles, the indemnitee must show the liability is covered by the contract, that liability existed, and the extent thereof. The settlement is presumptive evidence of liability of the indemnitee and of the amount of liability, but it may be overcome by proof from the indemnitor that the settlement was unreasonable (e.g., unreasonable in amount, entered collusively or in bad faith, or entered by an indemnitee not reasonable in the belief that he or she had an interest to protect).

D.  *The Effect of the Allocation*

The parties do not dispute that, under the indemnification agreement, Culley may not be held liable for the entire amount of the settlement. Rather, Culley's obligation extends only to damages arising out of its work on the building's foundation. Thus, in this case, allocation of the settlement is at least as important as the total amount of Kaplan's settlement with Park Hill.

settle. (*Smith, supra*, at pp. 1110, 1112-1114.) In a later section of this opinion, we also address the effect of a purported settlement by nonadverse parties.

Yet, insofar as the record before us discloses, the allocation of the settlement amount had no effect on Kaplan: Kaplan would pay $225,000 regardless of how the settlement was allocated, and Kaplan assigned to Park Hill the only significant indemnification rights. Although Park Hill, as possessor of the indemnification rights, would benefit from a high allocation, a high allocation would not in any way be detrimental to Kaplan. Consequently, neither party had a motivation to allocate other than a high amount to Culley's potential liability for foundation design defects.

We have found no case addressing the situation presented here. We find, however, no justification for giving presumptive effect to an allocation that is not the product of adverse negotiation. A presumption that the parties have reasonably allocated a settlement amount between issues in the action should be reserved for a settlement by parties with truly adverse interests in the allocation. (Cf. *Abbott Ford, Inc.* v. *Superior Court* (1987) 43 Cal.3d 858, 879 [239 Cal.Rptr. 626, 741 P.2d 124].) Where the parties have purported to settle an imaginary dispute over allocation, that allocation should be given no special treatment in an indemnity action. Plaintiff should be required to prove the reasonableness of its proposed allocation by ordinary means.

E. *Motion Procedures, Burden of Proof, and the Role of "Good Faith"*

The record before us does not reveal why the court used motion procedures to decide the issue of good faith. It does, however, demonstrate at least one problem stemming from that decision. During the proceedings, the court stated, correctly, that the burden of proof in the indemnity action was on Park Hill. (Cf. *Mullin Lumber Co.* v. *Chandler, supra,* 185 Cal.App.3d at p. 1134.) In its written order, however, the court equated its decision with the good faith decision in section 877.6 proceedings and assigned the burden of proof to Culley, as it would have under section 877.6, subdivision (d).

As explained above, in a contractual indemnity action, the indemnitee must prove that liability is covered by the contract, that liability existed, and the extent thereof. A settlement in prior litigation is only presumptive evidence of liability and the amount thereof, which evidence may be overcome by the indemnitor's proof that the settlement was unreasonable.

All these matters are determined at trial. The court holds no separate good faith hearing to confirm the settlement. In fact, in an indemnity action, the critical issue is not good faith, but *reasonableness.* (See *Smith* v. *State Farm Mut. Auto. Ins. Co., supra,* 5 Cal.App.4th at p. 1110; *Cravens, Dargan & Co.* v. *Pacific Indem. Co.* (1972) 29 Cal.App.3d 594, 602 [105 Cal.Rptr. 607].) In ruling on the reasonableness of a settlement, the court may consider any

relevant evidence, including evidence tending to show the presence or absence of good faith as that term is applied in *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488, 499-500 [213 Cal.Rptr. 256, 698 P.2d 159].

### VII. *Summary and Conclusion*

As we have explained above, the superior court erred in failing to rule on the critical issue of the meaning of the indemnity clause in the contract, in giving conclusive effect to an allocation made by parties who evidently were not adverse on the allocation issue, and in treating the question of good faith as determinative. The court also improperly assigned the burden of proof to Culley and erroneously used motion procedures to decide issues that would normally be decided at trial.

Culley may have invited some of these mistakes or at least permitted them by failing to object. However, Culley did strongly object to the court approving an allocation made in proceedings to which it was not a party and to the court holding Culley liable without finding negligence, a condition to the agreement as read by Culley.

The court's mistakes were understandable in light of the dearth of case authority in this area. However, these errors, if not corrected now, are virtually certain to taint the judgment in this case. We grant the petition for a writ of mandate.

Let a peremptory writ of mandate issue directing the San Francisco Superior Court to vacate its good faith settlement order and to conduct further proceedings, consistent with this opinion, to resolve the issues in this case.

White, P. J., and Merrill, J., concurred.

A petition for a rehearing was denied December 16, 1992, and the opinion was modified to read as printed above.