Filed 7/16/15; pub. order 8/14/15 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY, | D067137 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. INC1104681) |
| SPANISH INN, INC. et al., | |
| Defendants and Appellants. | |


APPEAL from a judgment of the Superior Court of Riverside County, John G. Evans, Judge.  Affirmed.

Law Offices of Nejat Kohan, Inc., and Nejat Kohan, for Defendants and Appellants.

Law Offices of Hall & Bailey, John L. Bailey, Barbara M. Moore; and William D. Cloud for Plaintiff and Respondent.

This is one of many appeals arising from litigation over the renovation of a hotel property in Palm Springs.  In this appeal, the project's developers challenge the trial court's grant of summary adjudication in favor of the title insurer, which sought

contractual indemnity from the developers for legal expenses incurred in defending the project's construction lender against mechanic's lien foreclosure actions. The developers contend the trial court erred because triable issues of fact exist regarding whether the mechanic's lien claims were covered by the title policy and regarding the amount of the title insurer's damages. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants Spanish Inn, Inc. (Spanish Inn), Hormoz Ramy, and Nejat Kohan owned or otherwise held an interest in the Spanish Inn Hotel property in Palm Springs. In order to renovate and rehabilitate the property, Spanish Inn borrowed $6 million from Nara Bank under a written construction loan agreement. To secure the loan, Nara Bank recorded a construction deed of trust against the property. To protect its construction deed of trust, Nara Bank required that Spanish Inn procure a lender's title insurance policy to protect against loss resulting from mechanic's liens. First American Title Insurance Company (First American) issued the policy. Before it would do so, however, First American required that defendants agree to indemnify it if any mechanic's liens were recorded against the property due to the contractor's or the owners' failure to pay for work furnished to the project. Accordingly, defendants and First American entered into a written "Indemnity Agreement I (Mechanic's Liens)" (the Indemnity Agreement).

Major modifications to the project caused its budget to increase and timeline to expand. Nara Bank agreed to lend an additional $1.3 million to Spanish Inn, but required that Hormoz and Ramy also contribute an additional $300,000 to the project.

2

After Spanish Inn missed the completion deadline under the construction loan agreement, Nara Bank declared the loan to be in default. Kohan, who also served as the project's contractor, recorded a mechanic's lien against the property for $800,000. Subcontractor J.H. Thompson & Sons, Inc. (Thompson) also recorded a mechanic's lien against the property for approximately $85,000.

Nara Bank assigned its construction deed of trust to Pacifica L 39 LLC (Pacifica), which later purchased the property at a nonjudicial foreclosure sale. It is undisputed that Pacifica, as Nara Bank's successor, is an insured under the title policy.

Kohan and Thompson each filed lawsuits to foreclose on their mechanic's liens. Pacifica tendered those claims to First American, which accepted the tender. First American then retained counsel to defend against the foreclosure actions and to seek indemnity from defendants under the Indemnity Agreement. First American's counsel made a written demand under the Indemnity Agreement that defendants defend Pacifica against the mechanic's lien foreclosure actions, obtain releases of the mechanic's liens, and indemnify First American for all costs and fees incurred in connection with the mechanic's liens. Defendants declined.

First American then sued defendants for express indemnity, breach of contract, and specific performance. It later moved for summary adjudication of the first two claims. First American sought damages of $250,876.53, which consisted of $207,119.58 in costs and attorney fees incurred in defending against the mechanic's lien foreclosure actions and in seeking indemnity from defendants; $20,950 that First American paid to settle with Thompson; plus 10 percent interest on the total.

3

Defendants opposed the motion on two grounds. First, they argued that the claim arising from Kohan's mechanic's lien fell within an exclusion from coverage in the title policy for "liens . . . created, suffered, assumed or agreed to by the insured claimant" (Exclusion 3(a)). Defendants asserted that Nara Bank, as the predecessor-in-interest to the insured claimant (Pacifica), "created" the mechanic's lien "by failing to provide the full loan amount it contracted to provide." This caused Spanish Inn to default on the loan, which, in turn, caused Kohan to record his mechanic's lien. Thus, defendants reasoned, Nara Bank created the mechanic's lien, which placed the lien squarely within Exclusion 3(a), which excused First American from defending against it, which, in turn, excused defendants from indemnifying First American. Second, defendants argued that triable issues of fact existed regarding the amount of First American's damages.

The trial court granted First American's motion. The court ruled that defendants had not presented admissible evidence sufficient to create a triable issue of fact regarding whether Kohan's mechanic's lien fell within Exclusion 3(a) because "the only evidence offered by Defendants is the declaration of NEJAT KOHAN, which is a factual narrative of Defendants' dealing with Nara Bank and a legal conclusion that Nara Bank intentionally failed to disburse the funds for Defendants to pay for the completion of the work needed to obtain a certificate of occupancy by the specified date in order to cause Defendants' default, and, that the declaration is argument and not based upon facts that show that Nara Bank's failure to disburse funds was wrongful."

4

The trial court also found that defendants had not raised a triable issue of fact regarding damages. First, the court found First American had submitted evidence to support the legal expense component of its claim, which shifted the burden to defendants to present evidence that created a triable issue of fact regarding the reasonableness of that component. The court found that defendants failed to satisfy this burden. Second, the court ruled that defendants' challenge to the reasonableness of the Thompson settlement amount "does not create a triable issue because the validity of the [Thompson] lien claim and the amount indisputably paid in settlement are not relevant to the issues on [First American]'s Motion." The court granted First American's motion to dismiss the remaining cause of action for specific performance and entered judgment in favor of First American.

Defendants timely appealed.

DISCUSSION

Defendants contend the trial court erred by granting summary adjudication of First American's claims because triable issues of fact existed regarding (1) whether Kohan's mechanic's lien claim fell within Exclusion 3(a), and (2) the reasonableness of First American's damages.

A. *Standard of Review*

"On appeal from a ruling on a motion for summary judgment, the appellate court conducts its own independent review of the moving and opposition papers and applies the same standard as the trial court in determining whether the motion was properly granted. The appellate court is not bound by the trial court's stated reasons for its ruling on the

5

motion, as the appellate court reviews only the ruling and not its rationale." (*Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners* (1997) 52 Cal.App.4th 867, 873.)

B. *Indemnity Framework*

Indemnity is " 'the obligation resting on one party to make good a loss or damage another party has incurred.' " (*McCrary Construction Co. v. Metal Deck Specialists, Inc.* (2005) 133 Cal.App.4th 1528, 1536 (*McCrary*).) "Parties to a contract . . . may define therein their duties toward one another in the event of a third party claim against one or both arising out of their relationship." (*Crawford v. Weather Shield Mfg. Inc.* (2008) 44 Cal.4th 541, 551.) In general, an indemnity agreement "is construed under the same rules as govern the interpretation of other contracts. Effect is to be given to the parties' mutual intent [citation], as ascertained from the contract's language if it is clear and explicit [citation]. Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense." (*Id.* at p. 552.)

We review de novo the trial court's interpretation of the Indemnity Agreement " 'unless the interpretation turns upon the credibility of extrinsic evidence.' " (*McCrary*, *supra*, 133 Cal.App.4th at p. 1535.)

C. *Analysis*

In a contractual indemnity action in which the indemnitee settles the underlying liability without trial, "the indemnitee must prove that liability is covered by the contract, that liability existed, and the extent thereof." (*Peter Culley & Assocs. v. Superior Court* (1992) 10 Cal.App.4th 1484, 1497, 1498 (*Culley*).)

Defendants do not appear to contest that First American's indemnity claim "is covered by the contract" (*Culley*, *supra*, 10 Cal.App.4th at p. 1497); that is, that the nature of First American's claim is within the scope of those covered by the Indemnity Agreement.

The determination of whether "liability existed" (*Culley*, *supra*, 10 Cal.App.4th at p. 1497) depends on whether the lien claims tendered to First American were covered by the title policy. We conclude they were, though for a different reason than the trial court cited. That is, instead of interpreting Exclusion 3(a), we need only interpret the Indemnity Agreement.

The Indemnity Agreement expressly gave First American the right to *conclusively* determine coverage under the title policy:

> "5.6 Determination of Coverage. Any determination of coverage by First American shall be conclusive evidence that the matter is within the Title Policy coverage as to the Mechanic Liens for purposes of this Agreement."

First American determined that the tendered claims were covered by the title policy. Therefore, regardless of whether Exclusion 3(a) would otherwise have excluded coverage for Kohan's lien, or whether defendants' factual defenses would otherwise have precluded coverage for Thompson's lien, First American was expressly authorized to—and did—

7

find that the tendered claims were "within the Title Policy." Thus, First American established that "liability existed."[1] (*Culley*, *supra*, 10 Cal.App.4th at p. 1498.)

Defendants argue that under the implied covenant of good faith and fair dealing, "the provision of the policy giving First American the unfettered right to determine whether an exclusion applies may not be enforced against Spanish Inn." We disagree. "[A]lthough it has been said the implied covenant finds 'particular application in situations where one party is invested with a discretionary power affecting the rights of another' [citations], if the express purpose of the contract is to grant unfettered discretion, and the contract is otherwise supported by adequate consideration, then the conduct is, by definition, within the reasonable expectation of the parties and 'can never violate an implied covenant of good faith and fair dealing.' " (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1120-1121; *Third Story Music, Inc. v. Waits* (1995) 41 Cal.App.4th 798, 808 (*Waits*) ["courts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power except in those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement."].)

Applying this principle, federal courts in California have rejected implied-covenant challenges to provisions in indemnity agreements similar to the one here. (*Travelers Cas. and Sur. Co. of America v. Highland Partnership, Inc.* (S.D. Cal., Nov.

---

[1] It is, therefore, unnecessary for us to address First American's evidentiary objections to Kohan's declaration, which relate only to facts regarding whether Nara Bank's conduct brought Kohan's mechanic's lien within Exclusion 3(a).

26, 2012, 10CV2503 AJB DHB) 2012 WL 5928139, at \*7; *Travelers Cas. and Sur. Co. of America v. Dunmore* (E.D. Cal., Dec. 4, 2014, 2:07-CV-02493 TLN) 2014 WL 6886004, at \*6-7.)[2]

Defendants imply this is one of "those relatively rare instances when reading the provision literally would, contrary to the parties' clear intention, result in an unenforceable, illusory agreement." (*Waits*, *supra*, 41 Cal.App.4th at p. 808.) In other words, without implying a good faith standard on First American's discretionary power, the Indemnity Agreement would fail for lack of mutuality and consideration. We are not persuaded. The Indemnity Agreement establishes that First American's rights were supported by adequate consideration—namely, its issuance of a $6 million title insurance policy. Defendants acknowledged as much in the Indemnity Agreement. In a paragraph captioned "estoppel" and printed in italicized, bolded, and all-capitalized typeface, the Indemnity Agreement specifies that First American's willingness to do so in this case was riskier than usual:

> "Notwithstanding any possible difference in the parity of the parties
> hereto, Indemnitor understands that First American is undertaking a
> risk significantly greater than that undertaken in the normal course
> of providing title insurance policies and related services by entering

---

[2] The provision in those cases provided: "Company shall have the right in its sole discretion, to determine for itself and its indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments." (*Travelers Cas. and Sur. Com. of America v. Dunmore*, *supra*, 2014 WL 6886004, at \*5; *Travelers Cas. and Sur. Co. of America v. Highland Partnership, Inc.*, *supra*, 2012 WL 5928139, at \*7.)

> into this agreement and issuing policies of title insurance in reliance on this agreement, and therefore, indemnitor hereby declares its willingness to enter into this agreement and to induce First American to accept this agreement, realizing that Indemnitor's best interest, in the opinion of Indemnitor, is being served thereby."

Therefore, defendants' mutuality and consideration argument fails.

Even if we were to conclude that the implied covenant of good faith and fair dealing governed First American's discretionary power, defendants still have not pointed to any *evidence* that would give rise to a triable issue of material fact regarding First American's exercise of that right in this case, as required. (*Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 11 (*Wiz*) ["To avoid summary judgment, admissible evidence presented to the trial court, not merely claims or theories, must reveal a triable, material factual issue."].) That defendants disagree with First American's conclusive determination does not establish that the determination was reached other than in good faith.

Finally, we turn to the "extent" of liability. (*Culley*, *supra*, 10 Cal.App.4th at p. 1498.) First American submitted declarations from its in-house senior claims counsel and its outside counsel, together with outside counsel's billing statements, to establish the extent of legal expenses it incurred in defending against the mechanic's lien claims and in seeking indemnity from defendants. Although defendants *argued* to the trial court that the "amount claimed for attorneys fees is not reasonable," defendants did not respond to

First American's evidence with *evidence* of their own, as required.[3] (*Wiz*, *supra*, 106 Cal.App.4th at p. 11; *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Ass'n* (2008) 163 Cal.App.4th 550, 563-564 ["Respondents supported their fee requests with declarations describing the joint defense and the division of labor, with billing records to establish the hours of work. Appellants had two options to oppose such a showing: attack the itemized billings *with evidence* that the fees claimed were not appropriate, or obtain *the declaration* of an attorney with expertise in the procedural and substantive law to demonstrate that the fees claimed were unreasonable. They did neither."], italics added.)

First American's evidence also established the "extent" of its liability arising from the settlement of the Thompson lien claim. Defendants' response to First American's separate statement of undisputed material facts identified this item as "Undisputed, except Defendants do not concede that such amount was actually owed to J.H. Thompson." Kohan's declaration explained that the amount of the Thompson settlement was unreasonable because "Thompson was actually overpaid and owed Spanish Inn a refund." In other words, defendants contend no "liability existed." (*Culley*, *supra*, 10 Cal.App.4th at p. 1497.) For the reasons discussed above, the parties agreed First American's determination that coverage exists is conclusive on the issue. Accordingly, defendants' attempt to repackage their attack on that determination as an attack on damages fails.

---

3    The only "[s]upporting [e]vidence" defendants cited in their response to First American's separate statement of undisputed material fact was "[l]egal [a]rgument."

11

Because First American established through undisputed evidence that it was entitled to indemnity under the Indemnity Agreement, we conclude the trial court did not err by granting First American's motion for summary adjudication.

DISPOSITION

The judgment is affirmed. First American is entitled to its costs on appeal.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.

12

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| FIRST AMERICAN TITLE INSURANCE COMPANY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SPANISH INN, INC. et al.,<br><br>    Defendants and Appellants. | D067137<br><br><br><br><br><br>(Super. Ct. No. INC1104681)<br><br><br>ORDER CERTIFYING OPINION<br><br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed July 16, 2015, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to California Rules of Court, rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

BENKE, Acting P. J.

Copies to:  All parties

14