Filed 10/20/25  City of Buenaventura v. Aloha Steakhouse CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| CITY OF SAN BUENAVENTURA, <br><br>   Respondent and Cross-Complainant, <br><br> v. <br><br> ALOHA STEAKHOUSE, <br><br>   Appellant and Cross-Defendant. | 2d Civil No. B338180 <br> (Super. Ct. No. 56-2020-00544711-CU-BC-VTA) <br> (Ventura County) |

Aloha Steakhouse (appellant) appeals the judgment entered in favor of the City of San Buenaventura (respondent) after the trial court granted respondent's motion for summary judgment in this action for express contractual indemnity. Appellant contends the trial court erred because the liability it directed appellant to pay is not within the scope of the indemnification agreement or a related insurance policy. Appellant further contends the trial court erred when it

concluded appellant's cross motion for summary judgment was moot and that it erred in granting respondent's motion for an award of defense costs that included respondent's attorney's fees. We affirm.

*Facts*

Appellant leases restaurant space from respondent. The lease mandates that appellant "shall hold [respondent] City . . . harmless and free from any and all liability arising out of or relating to this Lease and/or Lessee's possession and use of the leased premises." It also requires appellant to maintain comprehensive general liability insurance "that will insure [appellant] Lessee and [respondent] City . . . in connection with [appellant] Lessee's performance of this Lease and against liability for injury to persons and property and for death of any person or persons occurring in or about the leased premises." Mid-Century Insurance Company (Mid-Century) issued the policy to appellant. It includes an endorsement naming respondent as an additional insured, "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to [appellant] . . . ."

On April 18, 2018, Jamal Jackson walked into appellant's restaurant from the adjacent Ventura Promenade. Anthony Mele was sitting at a table in the restaurant, eating dinner with his wife and daughter. Jackson walked up to the table and fatally stabbed Mele in the neck.

Mele's family sued appellant and respondent, alleging causes of action for negligence, wrongful death, dangerous condition of public property, deprivation of civil rights, and negligent infliction of emotional distress (the "*Mele* Action"). Mid-Century accepted respondent's defense under a reservation

2

of rights, arguing that it was questionable whether Mele's death arose out of appellant's use of the premises. The court in the *Mele* Action sustained respondent's demurrer without leave to amend to every cause of action except the cause of action for dangerous condition of public property.

Mid-Century settled the *Mele* Action for the policy limits of $2 million, reserving the right to seek reimbursement from respondent. (*Blue Ridge Ins. Co. v. Jacobsen* (2001) 25 Cal.4th 489, hereafter, *Blue Ridge*.) It then filed this lawsuit against respondent for reimbursement of the entire settlement on the theory that appellant was not at fault to any degree and therefore, the amounts Mid-Century paid to settle the *Mele* Action were for a liability not covered by appellant's policy. Respondent filed a cross-complaint against appellant for indemnification.

Mid-Century made an offer under Code of Civil Procedure section 998 to settle the reimbursement claim for $650,000. Respondent accepted the offer. The resulting judgment (the "*Blue Ridge* settlement") did not mention respondent's cross-complaint against appellant or the lease's indemnification clause. It included no admission by respondent regarding the scope of either the insurance policy or the indemnification clause in the lease.

After the *Blue Ridge* settlement, appellant and respondent each filed a motion for summary judgment on the cross-complaint. The trial court granted respondent's motion and denied appellant's. It concluded that the *Mele* Action arose from appellant's use of the leased premises because, "If Mr. Mele is not inside the restaurant and using it for its intended purpose of purchasing a meal, his family's lawsuit is never filed. . . . [I]t is

3

impossible to separate Mele's presence in the restaurant from the final outcome. Aloha was using the property to provide restaurant services to the general public. Mele's presence is Aloha's 'use' of the area they leased for commercial purposes."

The trial court further concluded respondent was not liable for Mele's injuries because there was no dangerous condition of public property and respondent had no duty to provide police protection to Mele. Appellant and the *Mele* plaintiffs had alleged that lighting on the Ventura Promenade was inadequate, but the trial court concluded, "A failure to provide lighting does not create a dangerous condition of public property." Similarly, the "failure to provide police protection is not actionable," so respondent had no liability for failing to intercept Jackson before he stabbed Mele. In light of its determination that the indemnity provision was enforceable and applied to the settlement of the *Mele* Action, the trial court concluded it was not necessary to analyze appellant's cross-motion for summary judgment.

After entry of judgment and after appellant had filed its notice of appeal, respondent moved for an order establishing its defense costs, including attorney's fees and prejudgment interest. The trial court awarded respondent $172,071.83 in costs, attorney fees and prejudgment interest.

*Contentions*

Appellant contends it had no duty to indemnify respondent for any portion of the *Blue Ridge* settlement because that settlement was an admission by respondent that the settlement in the *Mele* Action did not arise out of appellant's use of the leased premises and the settlement of the *Mele* Action was therefore not covered by appellant's insurance policy. Because

4

appellant views the scope of the indemnification clause in the lease as identical to the coverage provided by the insurance policy, appellant contends the indemnification clause also does not apply to the *Blue Ridge* settlement.  In appellant's view, the *Blue Ridge* settlement reimbursed Mid-Century only for amounts paid to the *Mele* plaintiffs that were not covered by the insurance policy.  When respondent consented to Mid-Century's settlement of the *Mele* Action and when respondent accepted the *Blue Ridge* settlement, appellant contends, respondent admitted there was no insurance coverage for those amounts and thus also admitted it was not entitled to indemnity under the lease.  Appellant contends the trial court speculated when it concluded there was no actionable dangerous condition of public property and when it concluded the indemnification clause applied solely because Mele was killed while eating in the restaurant.  Appellant further contends the trial court erred when it declined to rule on appellant's motion for summary judgment.  Finally, appellant contends the trial court erred when it awarded respondent's defense costs because it lacked jurisdiction after the notice of appeal was filed and because respondent's attorney's fees are not recoverable as costs.

*Standard of Review*

The standard of review is well settled.  We review the grant of summary judgment de novo, applying the same standard as the trial court.  (*Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 388.)  This requires us to determine independently whether any triable issue of material fact exists and whether the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Champlin/GEI Wind Holdings, LLC v. Avery* (2023) 92 Cal.App.5th 218, 224.)

5

*Discussion*

*Indemnification*

"Indemnity may be defined as the obligation resting on one party to make good a loss or damage another party has incurred. . . . Where, as here, the parties have expressly contracted with respect to the duty to indemnify, the extent of that duty must be determined from the contract . . . ." (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 628.) "The extent of the duty to indemnify is determined from the contract. [Citation.] The indemnity provisions of a contract are to be construed under the same rules governing other contracts with a view to determining the actual intent of the parties." (*Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 968-969. (*Myers Building Industries*).) We give the words of the contract their ordinary meaning unless the parties have expressly given them a special meaning. (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 552 (*Crawford*).)

Here, the lease obligates appellant to indemnify respondent for "any and all liability arising out of or relating to this Lease and/or [appellant's] possession and use of the leased premises." California courts "have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." (*Acceptance Ins. Co. v. Syufy Enterprises* (1999) 69 Cal.App.4th 321, 328; see also *Continental Heller Corp. v. Amtech*

*Mechanical Services, Inc.* (1997) 53 Cal.App.4th 500, 503 [agreement providing indemnity for loss that "'arises out of or is in any way connected'" with subcontractor's work "does not require a showing the subcontractor was at fault in causing the general contractor's loss or that its performance was a 'substantial' or 'predominating' cause of the loss"].)

Like the trial court we conclude the *Blue Ridge* settlement falls within the scope of the lease's indemnification provision. Appellant used the leased premises to operate a restaurant. The Mele family was patronizing the restaurant when Jackson entered it and stabbed Mele to death. The victim's presence at the scene of the crime "arose out of" or was "related to" appellant's possession and use of the leased premises because he was there as an invitee, to patronize appellant's restaurant. (See, e.g., *Morris v. De La Torre* (2005) 36 Cal.4th 260, 264 [restaurant owner owed a duty to an invitee who was injured by third-party criminals in the restaurant's parking lot].) Because Mele's injury occurred inside the leased premises, in an area under appellant's control, the trial court properly concluded that it arose out of appellant's possession or use of the leased premises.

*Morlin Asset Management LP v. Murachanian* (2016) 2 Cal.App.5th 184, is instructive. There, a tenant rented a dental suite and agreed to indemnify the landlords for claims "arising out of, involving or in connection with, the use and/or occupancy of the Premises by Lessee." (*Id.* at p. 188.) The tenant hired a contractor to clean the carpets in the dental suite. He was injured while carrying soapy water up a staircase in the building's common area and sued both tenant and landlords for his injuries. The landlords sought indemnification from the

tenant, contending the injury would not have occurred if the tenant had not hired the contractor. This argument was rejected by the court of appeal. "We hold that under the indemnity clause in this case, the injury to a third party that occurred outside the dental suite, in a common area over which the landlords have exclusive control, did not arise out of the tenant's use of the dental suite. . . . The connection between the tenant's use of his suite and the accident in the stairwell over which the tenant had no control is too remote to have been within the contemplation of the parties when they entered into the lease." (*Id.* at p. 193.)

By contrast, Mele was killed inside the leased premises, in an area that was controlled by appellant. He was there to patronize the restaurant appellant operated in the leased premises. His death arose out of appellant's use of the leased premises and was not too remote from that use to have been within the scope of the lease.

Appellant contends that the indemnification clause in the lease and the coverage provided by the Mid-Century insurance policy are identical. In appellant's view, when respondent consented to settlement of the *Mele* Action and when it accepted the *Blue Ridge* settlement, it admitted that its portion of the *Mele* settlement was for damages not covered by the Mid-Century policy. That admission also precludes indemnification under the lease, appellant contends, because the lease provides the same indemnity as the insurance policy. We disagree.

Respondent made no admission concerning the scope of the insurance policy, or the lease's indemnification clause, when Mid-Century settled the *Mele* Action or when respondent settled the *Blue Ridge* action. In addition, because it was a settlement under section 998, the *Blue Ridge* settlement is not

8

entitled to preclusive effect. As our Supreme Court noted in *California State Auto Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 665, fn. 3, "the Legislature did not intend to give settlements under [section 998] collateral estoppel effect. . . . [I]ssues settled in this manner are not deemed actually litigated." A settlement under section 998 "does not constitute a judicial determination of the insured's liability." (*Laxague v. Fireman's Fund Ins. Co.* (1990) 220 Cal.App.3d 530, 535; see also *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305-306 [settlement of third party's claim against indemnitee is not "a conclusive judicial determination of the [indemnitee's] liability . . . "].) When it accepted the *Blue Ridge* settlement, respondent did not admit to a lack of insurance coverage for the *Mele* settlement or that the settlement fell outside the scope of the lease's indemnification clause.

For the same reason, we reject appellant's contention that judicial estoppel precludes indemnification under the lease. Respondent never admitted its damages were unrelated to appellant's use of the leased premises. The position it takes here is consistent with the position it took against Mid-Century. There is no basis for judicial estoppel. (See, e.g., *Blix Street Records, Inc. v. Cassidy* (2010) 191 Cal.App.4th 39, 47-48.)

*Peter Culley & Associates v. Superior Court* (1992) 10 Cal.App.4th 1484, relied upon by appellant, is not to the contrary. Unlike the present case, *Culley* concerned the impact of a good faith settlement (Code Civ. Proc., § 877.6), on a subsequent action to enforce a contractual right to indemnification. (*Cully, supra,* at p. 1488.) *Culley* did not involve section 998 and this case does not involve a good faith settlement finding. In addition, the indemnification clause at issue in *Culley* was more narrow than

9

either the lease or the insurance policy at issue here, applying only to damages "'resulting from [the indemnitor's] negligent performance of services'" under the contract. (*Culley, supra,* at p. 1488.) *Culley* held that it was error to fail "to rule on the critical issue of the meaning of the indemnity clause in the contract, [to give] conclusive effect to an allocation made by parties who evidently were not adverse on the allocation issue, and [to treat] the question of good faith as determinative." (*Id.* at p. 1499.) None of these errors are at issue here.

Appellant contends the *Blue Ridge* settlement reimbursed Mid-Century for amounts paid to settle the *Mele* Action that were not covered by the insurance policy. Because there was no insurance coverage for those amounts, appellant contends, respondent is also not entitled to be indemnified for them. Instead, the damages reimbursed in the *Blue Ridge* settlement were caused by a dangerous condition of public property – poor lighting on the Ventura Promenade – and by respondent's "active negligence" in failing to intercept Jackson before he stabbed Mele. We are not persuaded. Neither the alleged dangerous condition nor the failure to protect against crime is a basis for respondent's liability in the *Mele* Action. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 ["public entities generally are not liable for failing to protect individuals against crime]"; *Mixon v. Pacific Gas & Electric Co.* (2012) 207 Cal.App.4th 124, 133 ["A public entity is under no duty to light its streets. . . . [T]he absence of street lighting is itself not a dangerous condition"].) Moreover, the *Mele* Action alleged that the leased premises themselves were part of the public property allegedly maintained in a dangerous condition. As a consequence, the claims alleged against respondent in the

10

*Mele* Action "related to" the leased premises and were therefore within the scope of the lease's indemnification clause.

Because it granted respondent's motion for summary judgment, the trial court noted that it was not necessary to reach appellant's motion. Appellant contends this was error. We disagree. The two motions are, as respondent notes, mutually exclusive. Appellant's motion argued it was entitled to judgment because, respondent "cannot meet its burden of proof because it does not seek to recover for a loss within the indemnification agreement . . . ." The trial court concluded that respondent's "loss" was within the indemnification agreement. In light of that finding, the trial court could not have granted appellant's motion. There was no error.

*Attorney Fees*

Appellant contends the trial court erred when it granted respondent its defense costs, including attorney's fees, after the notice of appeal had been filed. There was no error.

The notice of appeal did not divest the trial court of jurisdiction to award respondent its attorney fees and costs. Because the award of attorney fees and costs is a collateral matter, "'filing a notice of appeal does not stay any proceedings to determine the matter of costs and does not prevent the trial court from determining a proper award of attorney fees claimed as costs.'" (*Korchemny v. Piterman* (2021) 68 Cal.App.5th 1032, 1052, quoting *Bankes v. Lucas* (1992) 9 Cal.App.4th 365, 368; see also, *Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 221-222; *Betz v. Pankow* (1993) 16 Cal.App.4th 931, 938.)

Nor did the trial court err in determining the amount of the fee award based on respondent's noticed motion. "Under Code of Civil Procedure section 1033.5, subdivision (a)(10),

11

attorney fees, when authorized by contract, statute or law, are recoverable as an element of costs. The Legislature has further detailed the procedure by which attorney fees as costs may be fixed: upon a noticed motion." (*Allstate Ins. Co. v. Loo* (1996) 46 Cal.App.4th 1794, 1797.)

Respondent was entitled to recover as defense costs the attorney fees it incurred in the litigation against Mid-Century. "[A] promise of *indemnity* against claims, demands, or liability 'embraces the *costs of defense* against such claims, demands, or liability' insofar as such costs are incurred reasonably and in good faith. ([Civil Code,] § 2778, subd. 3, italics added.)" (*Crawford, supra,* 44 Cal.4th at p. 553; see also *Myers Building Industries, supra,* 13 Cal.App.4th at p. 971, fn. 20 [attorney fees incurred in a third party claim "are recoverable by operation of law pursuant to Civil Code section 2778, subdivision 3, whether or not they are expressly mentioned in the indemnity clause"].)

As appellant notes, the obligation to pay defense costs does not include attorney fees incurred in litigation between the parties to the indemnification contract. (*Alki Partners, LP v. DB Fund Services, LLC* (2016) 4 Cal.App.5th 574, 578.) The fee award here, however, does not violate this rule. The trial court's order awards respondent "its costs of defending against the Mid-Century action for reimbursement . . . ." In the reimbursement claim, Mid-Century was representing its own interests, not appellant's. The fees respondent incurred in defending against that claim were properly awarded as defense costs.

*Conclusion*

The judgment is affirmed.  Respondent shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

Henry J. Walsh, Judge

Superior Court County of Ventura

_____

Selvin Wrath and Gary R. Selvin, Robin D. Korte, for Appellant and Cross-Defendant.

Olivarez Madruga and Lloyd Pilchen, Thomas M. Madruga, for Respondent and Cross-Complainant.